# **APPENDIX A**

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.
MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423
Prepared By:
NAOMI CLOCK
Countrywide Bank, N.A.


8300 COLLEGE BLVD, STE#140
OVERLAND PARK, KS 66210

---

[Space Above This Line For Recording Data]

| 4076982 | 00013718532106006 |
|---|---|
| [Escrow/Closing #] | [Doc ID #] |

## MORTGAGE
### (Line of Credit)

MIN 1001337-0001448774-1

THIS MORTGAGE, dated JUNE 7, 2006 , is between
ROBERTA LINDERMAN, AN UNMARRIED WOMAN



the person or persons signing as "Mortgagor(s)" below and hereinafter referred to as "we," "our," or "us" and
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., ("MERS") a Delaware corporation, with
an address of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS acting solely as nominee for
Countrywide Bank, N.A.
("Lender" or "you") and its successors and assigns. MERS is the "Mortgagee" under this Mortgage.

● MERS HELOC - IL Mortgage
1D999-IL (11/04)(d)                          Page 1 of 7                          Initials: _____



DOC ID #: 0001371853210600G

MORTGAGED PREMISES: In consideration of the loan hereinafter described, we hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the premises located at:

███████████████████████████████

COOK ████████████████████ "Premises").
County                              ZIP

and further described as:
SEE ATTATCHED EXHIBIT A.

Parcel ID #: 1225434042

The Premises includes all buildings, fixtures and other improvements now or in the future on the Premises and all rights and interests which derive from our ownership, use or possession of the Premises and all appurtenances thereto.

WE UNDERSTAND and agree that MERS is a separate corporation acting solely as nominee for Lender and Lender's successors and assigns, and holds only legal title to the interests granted by us in this Mortgage, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property, and to take any action required of Lender including, but not limited to, releasing or canceling this Mortgage.

LOAN: This Mortgage will secure your loan to us in the principal amount of $ 87,100.00     or so much thereof as may be advanced and readvanced from time to time to
ROBERTA LINDERMAN

the Borrower(s) under the Home Equity Credit Line Agreement and Disclosure Statement (the "Note") dated
JUNE 7, 2006          , plus interest and costs, late charges and all other charges related to the loan, all of which sums are repayable according to the Note. This Mortgage will also secure the performance of all of the promises and agreements made by us and each Borrower and Co-Signer in the Note, all of our promises and agreements in this Mortgage, any extensions, renewals, amendments, supplements and other modifications of the Note, and any amounts advanced by you under the terms of the section of this Mortgage entitled "Our Authority To You." Loans under the Note may be made, repaid and remade from time to time in accordance with the terms of the Note and subject to the Credit Limit set forth in the Note.

DOC ID #: 00013718532106006

OWNERSHIP: We are the sole owner(s) of the Premises. We have the legal right to mortgage the Premises to you.

OUR IMPORTANT OBLIGATIONS:

(a) TAXES: We will pay all real estate taxes, assessments, water charges and sewer rents relating to the Premises when they become due. We will not claim any credit on, or make deduction from, the loan under the Note because we pay these taxes and charges. We will provide you with proof of payment upon request.

(b) MAINTENANCE: We will maintain the building(s) on the Premises in good condition. We will not make major changes in the building(s) except for normal repairs. We will not tear down any of the building(s) on the Premises without first getting your consent. We will not use the Premises illegally. If this Mortgage is on a unit in a condominium or a planned unit development, we shall perform all of our obligations under the declaration or covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development and constituent documents.

(c) INSURANCE: We will keep the building(s) on the Premises insured at all times against loss by fire, flood and any other hazards you may specify. We may choose the insurance company, but our choice is subject to your reasonable approval. The policies must be for at least the amounts and the time periods that you specify. We will deliver to you upon your request the policies or other proof of the insurance. The policies must name you as "mortgagee" and "loss-payee" so that you will receive payment on all insurance claims, to the extent of your interest under this Mortgage, before we do. The insurance policies must also provide that you be given not less than 10 days prior written notice of any cancellation or reduction in coverage, for any reason. Upon request, we shall deliver the policies, certificates or other evidence of insurance to you. In the event of loss or damage to the Premises, we will immediately notify you in writing and file a proof of loss with the insurer. You may file a proof of loss on our behalf if we fail or refuse to do so. You may also sign our name to any check, draft or other order for the payment of insurance proceeds in the event of loss or damage to the Premises. If you recieve payment of a claim, you will have the right to choose to use the money either to repair the Premises or to reduce the amount owing on the Note.

(d) CONDEMNATION: We assign to you the proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Premises, or part thereof, or for conveyance in lieu of condemnation, all of which shall be paid to you, subject to the terms of any Prior Mortgage.

(e) SECURITY INTEREST: We will join with you in signing and filing documents and, at our expense, in doing whatever you believe is necessary to perfect and continue the perfection of your lien and security interest in the Premises. It is agreed that the Lender shall be subrogated to the claims and liens of all parties whose claims or liens are discharged or paid with the proceeds of the Agreement secured hereby.

(f) OUR AUTHORITY TO YOU: If we fail to perform our obligations under this Mortgage, you may, if you choose, perform our obligations and pay such costs and expenses. You will add the amounts you advance to the sums owing on the Note, on which you will charge interest at the interest rate set forth in the Note. If, for example, we fail to honor our promises to maintain insurance in effect, or to pay filing fees, taxes or the costs necessary to keep the Premises in good condition and repair or to perform any of our other agreements with you, you may, if you choose, advance any sums to satisfy any of our agreements with you and charge us interest on such advances at the interest rate set forth in the Note. This Mortgage secures all such advances. Your payments on our behalf will not cure our failure to perform our promises in this Mortgage. Any replacement insurance that you obtain to cover loss or damages to the Premises may be limited to the amount owing on the Note plus the amount of any Prior Mortgages.

DOC ID #: 00013718532106006

(g) PRIOR MORTGAGE: If the provisions of this paragraph are completed, this Mortgage is subject and subordinate to a prior mortgage dated 11/02/2005 and given by us to COUNTRYWIDE HOME LOANS, INC. as mortgagee, in the original amount of $ 294,083.20 (the "Prior Mortgage"). We shall not increase, amend or modify the Prior Mortgage without your prior written consent and shall upon receipt of any written notice from the holder of the Prior Mortgage promptly deliver a copy of such notice to you. We shall pay and perform all of our obligations under the Prior Mortgage as and when required under the Prior Mortgage.

(h) HAZARDOUS SUBSTANCES: We shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Premises. We shall not do, nor allow anyone else to do, anything affecting the Premises that is in violation of any Environmental Law. The first sentence of this paragraph shall not apply to the presence, use, or storage on the Premises of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Premises. As used in this paragraph, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph, "Environmental Law" means federal laws and laws of the jurisdiction where the Premises are located that relate to health, safety or environmental protection.

(i) SALE OF PREMISES: We will not sell, transfer ownership of, mortgage or otherwise dispose of our interest in the Premises, in whole or in part, or permit any other lien or claim against the Premises without your prior written consent.

(j) INSPECTION: We will permit you to inspect the Premises at any reasonable time.

NO LOSS OF RIGHTS: The Note and this Mortgage may be negotiated or assigned by you without releasing us or the Premises. You may add or release any person or property obligated under the Note and this Mortgage without losing your rights in the Premises.

DEFAULT: Except as may be prohibited by applicable law, and subject to any advance notice and cure period if required by applicable law, if any event or condition of default as described in the Note occurs, you may foreclose upon this Mortgage. This means that you may arrange for the Premises to be sold, as provided by law, in order to pay off what we owe on the Note and under this Mortgage. If the money you receive from the sale is not enough to pay off what we owe you, we will still owe you the difference which you may seek to collect from us in accordance with applicable law. In addition, you may, in accordance with applicable law, (i) enter on and take possession of the Premises; (ii) collect the rental payments, including over-due rental payments, directly from tenants; (iii) manage the Premises; and (iv) sign, cancel and change leases. We agree that the interest rate set forth in the Note will continue before and after a default, entry of a judgment and foreclosure. In addition, you shall be entitled to collect all reasonable fees and costs actually incurred by you in proceeding to foreclosure, including, but not limited to, reasonable attorneys' fees and costs of documentary evidence, abstracts and title reports.

ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER: As additional security, we assign to you the rents of the Premises. You or a receiver appointed by the courts shall be entitled to enter upon, take possession of and manage the Premises and collect the rents of the Premises including those past due.

DOC ID #: 0001371853210600 6

**WAIVERS:** To the extent permitted by applicable law, we waive and release any error or defects in proceedings to enforce this Mortgage and hereby waive the benefit of any present or future laws providing for stay of execution, extension of time, exemption from attachment, levy and sale and homestead exemption.

**BINDING EFFECT:** Each of us shall be fully responsible for all of the promises and agreements in this Mortgage. Until the Note has been paid in full and your obligation to make further advances under the Note has been terminated, the provisions of this Mortgage will be binding on us, our legal representatives, our heirs and all future owners of the Premises. This Mortgage is for your benefit and for the benefit of anyone to whom you may assign it. Upon payment in full of all amounts owing to you under the Note and this Mortgage, and provided any obligation to make further advances under the Note has terminated, this Mortgage and your rights in the Premises shall end.

**NOTICE:** Except for any notice required under applicable law to be given in another manner, (a) any notice to us provided for in this Mortgage shall be given by delivering it or by mailing such notice by regular first class mail addressed to us at the last address appearing in your records or at such other address as we may designate by notice to you as provided herein, and (b) any notice to you shall be given by certified mail, return receipt requested, to your address at

For MERS:
P.O. Box 2026, Flint, MI 48501-2026

For Lender:
1199 North Fairfax St. Ste.500, Alexandria, VA 22314
or to such other address as you may designate by notice to us. Any notice provided for in this Mortgage shall be deemed to have been given to us or you when given in the manner designated herein.

**RELEASE:** Upon payment of all sums secured by this Mortgage and provided your obligation to make further advances under the Note has terminated, you shall discharge this Mortgage without charge to us and shall pay any fees for recording of a satisfaction of this Mortgage.

**GENERAL:** You can waive or delay enforcing any of your rights under this Mortgage without losing them. Any waiver by you of any provisions of this Mortgage will not be a waiver of that or any other provision on any other occasion.

**SECURITY AGREEMENT AND FIXTURE FILING:** This Mortgage constitutes a security agreement with respect to all fixtures and other personal property in which you are granted a security interest hereunder, and you shall have all of the rights and remedies of a secured party under the Uniform Commercial Code as enacted in the state where the property is situated (the "Uniform Commercial Code"). The recording of this Mortgage in the real estate records of the county where the property is located shall also operate from the time of recording as a fixture filing in accordance with the Uniform Commercial Code.

Initials: _____

● MERS HELOC - IL Mortgage
1D999-IL (11/04)

```
DOC ID #: 00013718532106006
```

THIS MORTGAGE has been signed by each of us under seal on the date first above written.

Sealed and delivered in the presence of:

WITNESS:

_____

_____

_____

_____

_____(SEAL)
Mortgagor: ROBERTA LINDERMAN

_____(SEAL)
Mortgagor:

_____(SEAL)
Mortgagor:

_____(SEAL)
Mortgagor:

DOC ID #: 00013718532106006

**STATE OF ILLINOIS,**       **County ss:**

I,_____ , a Notary Public in and for said county and state do hereby certify that

_____

_____ , personally known to me to be the same person(s) whose name(s) subscribed to the foregoing instrument, appeared before me this day in person, and acknowledged that he _____signed and delivered the said instrument as free and voluntary act, for the uses and purposes the rein set forth.

Given under my hand and official seal, this _____ day of _____

My Commission Expires:

This Instrument was prepared by:

_____

Notary Public

# APPENDIX B

Prepared by: NAOMI CLOCK

**Countrywide Bank, N.A.**

DATE:    06/05/2006
BORROWER: ROBERTA LINDERMAN
CASE #:
LOAN #:
PROPERTY ADDRESS:

Branch #: 0000457
8300 COLLEGE BLVD, STE#140
OVERLAND PARK, KS 66210
Phone: (913)253-7400
Br Fax No.: (913)661-0907

### HOME EQUITY CREDIT LINE AGREEMENT AND
### DISCLOSURE STATEMENT
### THIS LOAN IS SECURED BY A JUNIOR MORTGAGE

Date: JUNE 07, 2006

This Home Equity Credit Line Agreement and Disclosure Statement ("Agreement") governs my Home Equity Credit Line Account ("Account") with you,
Countrywide Bank, N.A.
The words "I," "me" and "my" refer to the Borrower signing this Agreement. If more than one Borrower signs this Agreement, the words "I," "me" and "my" refer to all who sign, separately and together. The words "you" and "your" refer to
Countrywide Bank, N.A.

**1. LOANS: DRAW AND REPAYMENT PERIOD.** Subject to the limitations explained in this Agreement, upon my request for loans, you agree to lend money to me from time to time until the last day of the sixtieth (60th) consecutive calendar month following the date set forth above ("Initial Draw Period,") or until the last day of any renewed Draw Period, up to my Credit Limit indicated in paragraph 5 below. (You will not make any loans if my Account is sooner terminated or suspended under paragraphs 12.B, 12.D, 13.B or 16.A below.) You will not make any loan before the fourth business day following the signing of this Agreement, except to the extent of proceeds of this loan that are for the purchase or initial construction of the Property.

I agree that prior to the end of the Initial Draw Period, you have the right to review my Account to decide whether such Initial Draw Period will be renewed. Unless you have sent me written notice not later than the sixtieth (60th) day before the Initial Draw Period ends that you have decided not to renew such Initial Draw Period, such Initial Draw Period will automatically renew for one additional sixty (60) month period, and the Draw Period on my Account shall thereafter be considered to be 120 months for purposes of this Agreement. If the Initial Draw Period is not renewed, then the Draw Period on my Account shall thereafter be considered to be 60 months for purposes of this Agreement.

After the Draw Period ends, I will no longer be able to obtain loans and then must pay the outstanding balance over the specified Repayment Period unless my Account is sooner terminated under paragraph 13.B below, in which case my Account is due and payable in full at the time of such termination. The Repayment Period shall be 180 months.

**2. MAKING LOANS.** You will make loans under this Agreement (up to my Available Credit Limit) by (i) honoring Equity Credit Line Checks you provide to me requesting advances of at least $250; (ii) if you issue an access card ("Card"); by honoring advances I request by using the Card at any Merchant or sevicer provider ("Merchant") or any participating automated teller ("ATM") networks; (iii) paying closing costs and finance charges in accordance with paragraph 8.C below; (iv) paying certain other amounts on my behalf in accordance with my disbursement authorization provided to you at or before the time I sign this Agreement; (v) paying any unpaid taxes, assessments, property insurance or other sums as provided under this Agreement or the Mortgage; or (vi) any other method or procedure you establish.

**3. SPECIAL CARD TERMS AND CONDITIONS.** I understand that you, in your sole discretion and at your sole option, may cause to be issued a Card, as an access device by which I may obtain advances under the Account. By applying for the Account, I have requested that you issue the Card to me if my application is approved and if you, at your option and in your sole discretion, provide access to my/our Account by the Card after the Account is opened. If one or more Cards are issued to me as a means of obtaining loan advances on my Account, I agree that my use of the Card and any related loan advances will be governed by the following terms and conditions **unless I cancel my card within [30] days of receiving the Card and have not authorized the use of the Card or Card account number.** I also agree to comply with any agreement between me and the Card Issuer:

A. <u>Account Access.</u> In addition to any means by which I may access my Account as described in the Agreement, I may be permitted to obtain (up to my Available Credit Limit) loan advances by using any Card you provide, at any merchant or service provider ("Merchant") that allows me to use the Card to pay for goods or services. If you provide

● HELOC - IL Agreement & Disclosure Statement
2C553-IL (12/05)(d)

Page 1 of 10





LOAN #: ███████

me with a Personal Identification Number ("PIN"), I may also obtain loan advances by using the Card at participating automated teller machine ("ATM") networks. I agree not to write my PIN on my Card(s) or disclose it to others. If I use my Card at an ATM, I understand that the owner of the ATM may charge me a fee for the transaction. I understand that in order to use my Card at an ATM, I must call 1-800-669-5864 to request a PIN. I also understand that Card loan advances (whether at a Merchant or ATM) may be subject to transactional limits that could restrict the full use of my Available Credit Limit. There are no minimum draw requirements that apply when I use the Card, except for any limits that may be imposed separately by a Merchant or ATM owner. I agree that if you decide in your sole discretion to approve any transactions above my Available Credit Limit, I will be responsible for the full amount of any such advances. I understand that if I make reservations or purchases of any kind using my Card, my Account may be immediately charged for the full amount of the reservation or purchase, regardless of whether I have received the goods or services requested at the time my Account is charged.

B. Liability. I agree that all borrowers who have executed the Agreement are jointly and severally liable under the terms of the Agreement for any Card transactions that are posted to the Account, whether or not a Card has been issued to all borrowers.

C. Authorizations. All Card transactions are processed through the applicable bankcard networks that are branded on the Card ("Bankcard Networks") according to the requirements and procedures of the Bankcard Networks. Some Card transactions may require prior authorization by you or pursuant to the requirements and procedures of the Bankcard Networks before they are approved for processing. The Bankcard Networks may refuse to process any Card transaction if it appears to be illegal or fraudulent, or if the Merchant or the transaction does not otherwise meet the requirements of the Bankcard Networks. In addition, you or the Card Issuer may deny authorization for any Card transaction if my Account has been suspended or terminated. I also agree that if you or the Card Issuer detects any suspicious or unusual use, you or the Card Issuer may suspend use of any Card.

D. Lawful Transactions. I agree to use my Card only for valid and lawful purposes. If I use my Card for any other purpose or transaction (herein called a "Prohibited Activity"), including, without limitation, gambling activities, I agree to promptly reimburse you, the Card Issuer (if other than you) and the Bankcard Networks for all amounts or expenses paid by any such party as a result of such use. You reserve the right to block any Prohibited Activity and/or to not approve any authorization request for a Prohibited Activity. Card transactions for any Prohibited Activity made by me or for my benefit shall be considered authorized by me. You will not be liable if I engage in any Prohibited Activity using the Card, and I will be responsible for the full amount of any loan advances made in connection with such Prohibited Activity. Display by an online merchant of the service mark of any Bankcard Network branded on the Card does not mean that a Card transaction over the Internet is legal where I reside.

E. Transactions With Merchants. I understand and agree that: (1) If a Merchant discloses a policy such as "no returns", "no refund", "no return or credit without receipt", "as is", "store credit only", "all sales final", or similar language, I will be bound by that policy when I use my Card to pay for goods or services from that Merchant; (2) When using my Card to make travel or lodging reservations, I must obtain the Merchant's cancellation policy and follow it if I cancel the reservations. If I cancel, I must obtain the cancellation number that the Merchant is required to give me pursuant to the requirements and procedures of the Bankcard Networks. The Merchant may charge me for a cancelled transaction unless I can provide you with a correct cancellation number. (3) If I authorize a Merchant to charge repeat transactions to my Account without my presenting my Card for each charge, then I must notify the Merchant when I want to discontinue the repeat transactions or if my Account is suspended or closed. Otherwise, I will be responsible to you for the amount of all such repeat transactions. I understand that if my loan advance privileges or my use of the Card is suspended or cancelled for any reason, it is my responsibility to pay for such repeat transactions directly until loan advance privileges and/or Card use are reinstated. (4) If I disagree with any transaction on my monthly statement or have a dispute with any Merchant as a result of a Card transaction, I agree to comply with the section entitled MY BILLING RIGHTS – I SHOULD KEEP THIS NOTICE FOR FUTURE USE in my Agreement. I will promptly provide you with such information or assistance as you reasonably request.

F. Foreign Transactions. I agree to pay you in U.S. dollars. If I make a Card transaction in a foreign currency, the appropriate Bankcard Network will convert the transaction amount into U.S. dollars at the rates, and in accordance with its operating regulations in effect at the time the transaction is processed. Currently, the regulations of the Bankcard Networks provide that the currency conversion rate to be used is either a wholesale market rate selected by the Bankcard Networks or a government-mandated rate, each in effect one day prior to the processing date, plus an adjustment factor (currently 1%) established by the Bankcard Networks. The Bankcard Networks may change the currency conversion rate, and the formula used to establish that rate, from time to time. The currency conversion rate in effect on the processing date may differ from the rate in effect on the transaction date or the posting date. The currency conversion rate used may be the same as, greater than or less than the amount that would be calculated by conversion through a financial institution in the country in which the transaction occurred. I understand that you do not determine the currency conversion rate or the formula to establish the rate that is used by the Bankcard Networks and that you do not receive any portion of the currency conversion rate used by the Bankcard Networks.

G. Limitation of Liability. Your liability to me, if any, for wrongful dishonor of any loan request I make using my Card is limited to my actual damages. I also agree that you are not responsible if any transaction is not approved, whether by you, a Merchant, Bankcard Network, or a third party, even if I have sufficient credit available.

H. <u>Termination/Suspension of Account</u>. Upon any termination or cancellation of my Account by you or by me, or any suspension of my loan advance privileges under the Agreement, I agree that all Cards will be destroyed by me upon your instruction, or may be retrieved by you or your agent.

I. <u>Cancellation/Expiration of Cards</u>. I may be permitted to use the Card to access my account only so long as the access card program remains active and you permit me to participate in the program. If more than one person has executed the Agreement, any one of us may request that our Cards be cancelled. The request, at your option, may be made verbally or in writing. You may also cancel any Card at your sole discretion at any time, including if (1) the contracts with current or future providers of services used to operate the Card program expire or are terminated; or (2) I have not used my Card to obtain a loan advance on my Account at least once during any 12 month period; (3) my card is lost, stolen, or otherwise subject to unauthorized use; or (4) any part of the Program, including use of the Card, is prohibited by applicable law. I understand and agree that the terms governing my ability to obtain loan advances during the Initial Draw Period and any renewed Draw Period are set forth in the Agreement and that those terms supercede any inconsistent expiration date(s) printed on any Cards that are issued to me to the extent that such expiration date(s) is (are) later than the expiration date of any Draw period defined in the Agreement.

J. <u>Lost or Stolen Cards</u>. **I agree to promptly notify you at 1-800-556-5678 if any Card is lost or stolen, or if I suspect unauthorized use.** You reserve the right not to honor any loan advance request made using a Card if any of my Cards has been cancelled or reported lost or stolen.

K. <u>Unauthorized Transactions</u>. I will not be liable for the unauthorized use of my Card. I agree to assist you in your investigation of any claims of unauthorized Card transactions and understand that I may be required to provide you with a written statement and/or an Affidavit of Forgery. I agree that if I permit a person to use the Card or Card account number, or if I benefit from another person's use of the Card or Card account number, such use is not unauthorized use of the Card, even if I did not intend to be responsible for such use.

L. <u>Special Rule for Card Purchases</u>. The following is in addition to the notice at the end of the Agreement entitled MY BILLING RIGHTS – I SHOULD KEEP THIS NOTICE FOR FUTURE USE:

**Special Rule for Card Purchases.**

If I have a problem with the quality of property or services that I purchased with my Card, and I have tried in good faith to correct the problem with the merchant, I may have the right not to pay the remaining amount due on the property or services. There are two limitations on this right:

(a)  I must have made the purchase in my home state or, if not within my home state, within 100 miles of my current mailing address; and

(b)  The purchase price must have been more than $50. These limitations do not apply if you or the Card Issuer own or operate the merchant, or if you or the Card Issuer mailed me the advertisement for the property or services.

**4. PROMISE TO PAY; MINIMUM PAYMENT; METHOD OF PAYMENT.**

A. I promise to pay to your order, when and as due, all loans made under this Agreement, plus all unpaid finance charges, insurance premiums, collection costs and other charges I owe to you now or in the future. I agree to make my payments in the manner specified in my periodic statement, and if I do so such payments will be credited as of the day of receipt.

B. At a minimum, you will send me a periodic statement at the end of each billing cycle in which there is a debit or credit balance or more than one dollar ($1.00) or in which a finance charge has been imposed. The periodic statement will show all Account activity during the billing cycle and contain other important information, including my "New Balance," my Annual Percentage Rate, the amount of my "Minimum Payment Due," my "Payment Due Date" and the place and manner of making payments.

C. I may pay all or part of my "New Balance" at any time, subject to a Account Termination Fee or Low Balance Fee, as applicable, as described in paragraph 8.D and 7.B(6), respectively (known as a "prepayment penalty" under federal law).

D. I may pay all or any part of my "New Balance" using an Equity Credit Line Check ("Check"). If I use a Check to pay all or any part of my New Balance, I understand that:

(1) The amount of the Check will be treated as any other advance is treated under the terms and conditions of my Account. My Check will not be honored if I do not have sufficient availability on my Account.

(2) If I make a payment using a Check, my principal balance will not decrease. The principal balance will increase by the amount of the Check.

(3) Interest will accrue on the total increased principal balance when I use a Check to make a payment on my Account.

(4) I may not use a Check to make a payment once the Draw Period ends; that is, a Check may not be used to make a payment during the Repayment Period.

LOAN #: ▓▓▓▓▓

E. Unless you terminate my Account and require immediate payment of the entire outstanding balance as provided in paragraph 13.B below, I must pay you at least the "Minimum Payment Due" for each billing cycle by the "Payment Due Date" shown on my periodic statement.

F. During the Draw Period, my "Minimum Payment Due" equals all unpaid finance charges, credit life insurance premiums and other charges imposed during the billing cycle together with any "Amount Past Due." My "Minimum Payment Due" during the Draw Period will not reduce the principal balance that is outstanding on my Account.

G. During the Repayment Period, if the Draw Period on my Account is 60 months or 120 months, my "Minimum Payment Due" equals 1/180th of the outstanding principal balance of my Account as of the last day of the Draw Period plus all unpaid finance charges, credit life insurance premiums and other charges imposed during the billing cycle together with any "Amount Past Due."

**5. CREDIT LIMIT.** My Credit Limit under this Agreement is $ 87,100.00 . I promise not to request a loan which will cause the unpaid principal balance of my Account to exceed my Credit Limit. You can increase the Credit Limit at any time without prior notice to me. You can refuse to make loans that cause my obligations under this Agreement to exceed my Credit Limit. You will make loans on my Account based on the "Available Credit Limit" shown on my most recent periodic statement. However, I agree that when I make payments on my Account by check or other non-cash method, you reserve the right to make loans based on the "Available Credit Limit" shown on the last periodic statement issued prior to the most recent periodic statement. In addition to each "Minimum Payment Due," I must pay immediately, without notice or demand from you, any part of the principal balance of my Account that exceeds my Credit Limit. I promise not to request a reduction in my Credit Limit to an amount below $5,000.

**6. ANNUAL PERCENTAGE RATE.**

☐ A. The initial Daily Periodic Rate is N/A %. The initial **ANNUAL PERCENTAGE RATE** is N/A %. These rates are "discounted" rates. This means that these rates are lower than the rates that would be in effect if the formula set forth in paragraph 6.C below had been used, in which event the initial Daily Periodic Rate would be N/A % and the initial **ANNUAL PERCENTAGE RATE** would be N/A %. These discounted rates will be in effect from the date of this Agreement until N/A . Thereafter, the Daily Periodic Rate and the Annual Percentage Rate will be determined using the formula set forth in paragraph 6.C below.

☒ B. The initial Daily Periodic Rate is 0.03425 % and the initial **ANNUAL PERCENTAGE RATE** is 12.500 %. These rates are not discounted.

C. My Annual Percentage Rate and Daily Periodic Rate may increase or decrease (the first day after my "discounted" rate has expired, if applicable) according to the following procedure: The **ANNUAL PERCENTAGE RATE** shall be the "Index" plus a "Margin." The "Index" will be the highest Prime Rate as published in the "Money Rates" table of The Wall Street Journal as of the first business day of the calendar month. The "Margin" is equal to the number of percentage points disclosed in paragraph 6.D below. Each billing cycle will end on the last day of the calendar month. Any new Index value shall be effective as of the first day of the billing cycle in which such new Index value is established.

Upon a change in the Index, any resulting change in my Daily Periodic Rate and Annual Percentage Rate will take effect without prior notice to me, and will apply to new loans and to the outstanding principal balance in my Account. The new Annual Percentage Rate and Daily Periodic Rate will apply to my then existing unpaid principal balance and all new loans I obtain until my Annual Percentage Rate and Daily Periodic Rate change again. The Daily Periodic Rate at any time equals the **ANNUAL PERCENTAGE RATE** divided by 365.

D. The "Margin" to be used under paragraph 6.C above to determine my **ANNUAL PERCENTAGE RATE** is 4.500 percentage points.

E. The Annual Percentage Rate is a simple interest rate. The Annual Percentage Rate includes only interest and not other costs. The **ANNUAL PERCENTAGE RATE** will never increase above 18.000 % or the maximum rate permitted by law, whichever is less.

F. If the Daily Periodic Rate (and the corresponding Annual Percentage Rate) increases, I will have to pay additional periodic finance charges and, as a result, I will have to pay larger "Minimum Payments."

**7. FINANCE CHARGE.** I agree to pay a finance charge on my Account as explained below.

A. Periodic **FINANCE CHARGE.**

(1) A loan represented by an Equity Credit Line Check will be posted to my Account on the date that such a check is presented to you for payment. Any loan advance represented by a Card transaction will be posted to my Account as of the date that you receive the transaction for processing. The periodic finance charge begins to accrue on my Account from the time a loan is posted to my Account. There is no grace period during which I can repay loan advances without incurring a periodic finance charge.

LOAN #: ▓▓▓▓▓▓

(2) You compute the periodic finance charge on my Account by applying the Daily Periodic Rate to the "Average Daily Balance" in my Account (including current transactions). To determine the periodic finance charge for any billing cycle, the "Average Daily Balance" is multiplied by the Daily Periodic Rate, then this product is multiplied by the number of days in the billing cycle.

(3) To get the "Average Daily Balance," you take the beginning principal balance of my Account each day, add any new loans and subtract any principal payments or credits. This gives you the Daily Balance. Then you add up all the Daily Balances for the billing cycle and divide by the total number of days in the billing cycle. This gives you the "Average Daily Balance."

**B. Other FINANCE CHARGES.**

**(1) Points FINANCE CHARGE.**

I agree to pay a Points FINANCE CHARGE of $ 0.00          at the time I sign this Agreement.

| | |
|---|---|
| _____ | $ _____ |
| _____ | $ _____ |
| _____ | $ _____ |
| _____ | $ _____ |
| _____ | $ _____ |

**(2) Broker Fee FINANCE CHARGES.**

I agree to pay Broker Fee FINANCE CHARGES of $ N/A          at the time I sign this Agreement.

| | |
|---|---|
| _____ | $ _____ |
| _____ | $ _____ |
| _____ | $ _____ |
| _____ | $ _____ |
| _____ | $ _____ |

**(3) Settlement Agent FINANCE CHARGES.**

I agree to pay the following Settlement Agent FINANCE CHARGES at the time I sign this Agreement:

| | |
|---|---|
| Closing Fee | $ _____ 0.00 |
| Closing/Escrow _____ | $ _____ 315.00 |
| _____ | $ _____ |
| _____ | $ _____ |
| _____ | $ _____ |
| _____ | $ _____ |

**(4) Miscellaneous FINANCE CHARGES.**

I agree to pay the following miscellaneous **Finance Charges** at the time I sign this Agreement:

| | |
|---|---|
| Flood Check Fee _____ | $ _____ 26.00 |
| _____ | $ _____ |
| _____ | $ _____ |
| _____ | $ _____ |

**(5) Annual Maintenance Fee FINANCE CHARGE**

☐ I agree to pay an annual maintenance fee **FINANCE CHARGE** of $ 20.00          which you will charge to my Account on the first anniversary of this Agreement and every anniversary date thereafter, whether or not I have used or continue to use my Account; except that such fee shall be waived for the entire term of this Agreement if I meet both of the following conditions: (a) I maintain an average outstanding daily balance which does not fall below $ 20,000.00          from the date of this Agreement through the first anniversary of this Agreement; and (b) I make each monthly payment during that period on or before the due date for each such payment. You will not rebate any portion of the annual fee if my Account is terminated or suspended before the end of any annual period.

☐ I will not be charged an annual maintenance fee **FINANCE CHARGE** on this loan.

**(6) Low Balance Fee FINANCE CHARGE**

☐ In consideration of having an Account with a reduced Margin, I agree to maintain an Average Daily Balance of $40,000 in each monthly billing cycle during the first two years of my Account. I further agree to pay a Low Balance Fee **FINANCE CHARGE** of $40 for each monthly billing cycle during the first two years of my Account in which I fail to maintain an Average Daily Balance of $40,000. You will not charge me for this fee for the month in which you charge me an Account Termination Fee pursuant to the terms of paragraph 8.D.

● HELOC - IL Agreement & Disclosure Statement
2C553-IL (12/06)                    Page 5 of 10

LOAN #: ████

**8. OTHER CHARGES.**

A. I agree to pay each of the charges listed below, which shall constitute additional indebtedness under this Agreement. Any charges assessed will be shown on my periodic statement for the billing cycle in which such charge is assessed:

(1) If I fail to make my "Minimum Payment Due" within ten (10)      days of the "Payment Due Date," I agree to pay a late fee of 5% of the late payment.

(2) I agree to pay a Return Item Fee of $15 for each check you receive in payment of my Account which is returned unpaid upon second presentment.

B. I agree to pay you or my broker the following closing costs at or before the time I sign this Agreement:

| | |
|---|---|
| Full Appraisal | $ 245.00 |
| Credit Report Fee | $ 35.00 |
| Abstract/Title | $ 85.00 |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| LESS Amounts Paid by Lender | $ 0.00 |
| Total Paid by Borrower | $ 706.00 |

C. I may elect to pay the closing costs described in paragraph 8.B above and the finance charges described in paragraph 7.B above in cash or by check at or before the time I sign this Agreement or I may elect to finance some or all of such costs and finance charges by allowing you to make a loan under my Account to pay some or all of such costs and finance charges.

D. ☐ I agree to pay an Account Termination Fee of $            if I pay in full and terminate my Account with you and ask you to satisfy my mortgage lien on or before the      anniversary of this Agreement.

☒ I will not be charged an Account Termination Fee on this loan.

**9. REAL PROPERTY SECURITY.** To secure the payment of all loans I obtain and the performance of all promises I make in this Agreement, I and all co-owners are giving you a Mortgage (the "Mortgage") covering my dwelling located at ████████████████████ (the "Real Property"). The Mortgage is security for my current and future obligations under this Agreement. I will continue to be obligated to make payment to you under this Agreement even if the Real Property is damaged or destroyed and whether or not any insurance proceeds are available.

**10. SECTION INTENTIONALLY OMITTED.**

**11. PROPERTY INSURANCE.** I agree to obtain and maintain property insurance against loss or damage to the Real Property, in such amounts, against such risks (including, but not limited to, flood damage insurance required by law), and according to such terms as you may require in the Mortgage or otherwise. I may obtain property insurance from any company of my choice that is acceptable to you. If the amount of the premiums for property insurance increases at any time during the term of my Account, I agree to pay any such increase(s).

**12. YOUR RIGHTS TO TEMPORARILY SUSPEND MY LOANS OR REDUCE MY CREDIT LIMIT.**

A. You may take the actions listed in paragraph 12.B below during the period that any of the following events or conditions occur:

(1)   the value of the Real Property declines significantly below its appraised value for the purposes of my Account;

(2)   you reasonably believe that I will not be able to meet the repayment requirements under my Account due to a material change in my financial circumstances, such as the filing of a bankruptcy petition by or against me;

LOAN #: ▮▮▮▮▮▮

(3)  I am in default of any material obligation of this Agreement, such as my important obligations listed in paragraph 14 below;

(4)  government action (such as enactment of a state usury law) prevents you from imposing the Annual Percentage Rate provided for in this Agreement;

(5)  government action (such as imposition of a tax lien) impairs the priority of the lien of the Mortgage such that the value of the lien of the Mortgage is less than 120% of my Credit Limit;

(6)  the maximum Annual Percentage Rate set forth in paragraph 6.E above is reached.

(7)  you release the Mortgage at my request because I have paid all amounts outstanding under my Account.

(8)  the creditor is notified by its regulatory agency that continued advances constitute an unsafe and unsound practice.

B. During the period in which a condition described in paragraph 12.A above occurs, you may refuse to make any additional loans or reduce my Credit Limit or do both. You will mail or deliver written notice to me after you suspend my Account or reduce my Credit Limit and this notice will describe the specific reasons for your action. You are obligated to reinstate my credit privileges when the condition(s) which caused the suspension or reduction have been cured or have changed, provided I have notified you in writing, explaining in detail and documenting how the condition(s) have been cured or have changed and no new condition(s) under paragraph 12.A above or 13.A below have occurred.

C. Before reinstating my right to obtain loans, or restoring my Credit Limit, you may conduct such searches, verifications and evaluations (such as credit reports, appraisals and lien searches) as you deem appropriate, and you may require me to reimburse you on demand for any costs you actually incur for obtaining credit reports and appraisals. You may take these steps to verify that (i) the condition(s) that caused your suspension of my loans or reduction of my Credit Limit no longer exist, and (ii) the priority of the lien of the Mortgage is not impaired.

D. If more than one Borrower signs this Agreement and any such Borrower requests that you cease making loans, you may comply with such a request. All Borrowers who have signed this Agreement must join in any request to reinstate the loans for such request to be effective. If all such persons subsequently request reinstatement of the loans, you must honor such a request unless a condition listed in paragraph 12.A above or 13.A below has occurred.

E. If an event or condition described in paragraph 12.A above occurs which is also an event or condition described in paragraph 13.A below, your rights and remedies described under paragraph 13.B below apply and supercede your rights described in this paragraph 12.

## 13. YOUR RIGHTS TO TERMINATE AND ACCELERATE MY ACCOUNT AND TAKE OTHER ACTION.

A. You may take the actions listed in paragraph 13.B below if any of the following events or conditions occur:

(1)  I fail to meet the repayment terms of this Agreement, such as my failure to make any Minimum Payment Due to you on or before the Payment Due Date;

(2)  I engage at any time in fraud or material misrepresentation in connection with my Account, whether in any application, in this Agreement or in the Mortgage;

(3)  I sell or transfer title to the Real Property without first obtaining your written permission;

(4)  I fail to maintain insurance on the Real Property as required under this Agreement or the Mortgage;

(5)  I act or fail to act and as a result a lien senior to the lien of the Mortgage is filed against the Real Property;

(6)  I die and I am not survived by another person obligated as a Borrower under this Agreement;

(7)  All or part of the Real Property is taken through eminent domain, condemnation or similar government taking;

(8)  A prior lienholder on the Real Property begins foreclosure under its security document;

(9)  The Real Property is used for an illegal purpose which could subject the Real Property to seizure;

(10)  I fail to pay taxes on the Real Property; or

LOAN #: ▮▮▮▮▮

(11)  My action or inaction adversely affects the Real Property or your rights in the Real Property. Such action or inaction could include, for example, the following:

    (a)  A judgment is filed against me;

    (b)  I commit waste or otherwise destructively use or fail to maintain the Real Property;

    (c)  I die and I am survived by another person obligated as a Borrower under this Agreement; or

    (d)  I move out of the Real Property.

B. If an event described in paragraph 13.A above occurs, subject to any notice or other limitation of applicable law, you may do any combination of the following things:

    (1)  you may terminate any of my rights under my Account;

    (2)  you may temporarily or permanently refuse to make any additional loans;

    (3)  you may declare all sums owing under this Agreement and any other agreement I have made with you to be immediately due and payable;

    (4)  you may foreclose the Mortgage;

    (5)  you may reduce my Credit Limit; and

    (6)  you may take any other action permitted by this Agreement, by law or in equity.

## 14. MY IMPORTANT OBLIGATIONS. I agree that:

A. I will pay all of my existing and future debts to you under any existing or future agreement with you and I will pay all of my existing and future debts to my other creditors as they become due and will not allow a creditor to obtain a judgment against me.

B. I will not permit any person or entity to levy upon, attach, garnish or otherwise take any money, account or other property in your possession that belongs to me.

C. From time to time, if requested, I will supply you with current financial information about me.

D. I have not made and will not make any misrepresentation in connection with my Account whether in my application, in this Agreement, or in the Mortgage.

E. I will not permit a receiver, sequestrator, liquidator, trustee, guardian, conservator or other judicial representative to be appointed for me or any of my property or for the Real Property.

F. I will not use or allow use of the Real Property for any illegal purpose.

G. I will not move out of the Real Property.

H. I will not permit a lien to be filed which takes priority over the Mortgage for future advances made under this Agreement.

I. I will not break any promise made in this Agreement or in the Mortgage of Trust such as:

    (1)  my promise not to exceed my Credit Limit;

    (2)  my "Important Obligations" listed in the Mortgage; and

    (3)  my promise not to request a reduction in my Credit Limit to an amount below $5,000.

## 15. COSTS OF COLLECTION. Subject to any limits of applicable law, I must pay for your reasonable and actual costs of collection, or foreclosure such as your court costs and reasonable attorney's or trustee's fees. Periodic finance charges will continue to accrue at the rates provided in this Agreement before and after I default and before and after you obtain a judgment against me.

## 16. MY RIGHTS TO TERMINATE MY RIGHTS TO OBTAIN LOANS.

A. <u>Termination by Me.</u> I may terminate my right to obtain loans by sending you a written notice which will become effective upon receipt by you. If more than one person signs this Agreement as Borrower, my right to obtain loans may be terminated by written notice pursuant to this paragraph 16.A signed by any one or more of such persons. I may also suspend my right to obtain loans pursuant to paragraph 12.D above.

LOAN #: ▬▬▬▬

B. Termination by You. My right to future advances under my Account will terminate at the end of the Draw Period or any renewed Draw Period if not sooner upon your exercise of your termination or suspension rights under paragraphs 12.B or 13.B above or my exercise of my suspension or termination rights under paragraphs 12.D or 16.A above.

C. Effect of Termination. Upon termination or suspension of my Account, whether by you or by me, I must continue to pay the "Minimum Payment Due" on or before my "Payment Due Dates" until all amounts owed to you under this Agreement are paid in full. However, I may be required to repay all my obligations to you immediately if you exercise your rights under paragraph 13.B above. I must return unused Equity Credit Line Checks to you upon termination. I may be required to pay an Account Termination Fee pursuant to paragraph 8.D above.

## 17. CHANGES TO AGREEMENT.

A. You may change this Agreement to the extent not prohibited by federal or state law, such as the changes listed as follows:

(1) if the original Index is no longer available, you may change the Index and Margin;

(2) you may make any change I agree to in writing;

(3) you may make a change which is unequivocally beneficial to me, such as offering me more minimum payment options, extensions or renewals of my Account, reductions in the rate or fees, and additional means to access loans; and

(4) you may make insignificant changes, such as changing the address to which payments must be sent, name changes, operational changes involving the billing cycle date, the date the Minimum Payment is due, the day of the month on which Index values are measured to determine my rate, your rounding rules and the balance computation method.

B. If required by applicable law, you will mail me notice of such a change before the effective date of the change. The change will be effective as to any existing unpaid balance and as to any future transactions under this Agreement.

## 18. OTHER PROVISIONS.

A. Third Parties. This Agreement obligates me and my estate, heirs and personal representatives. This Agreement benefits you and your successors and assigns. You may add or release parties, or permit the addition or substitution of real property collateral that secures this Agreement, or modify, extend or amend this Agreement without in any way affecting my or any non-borrower co-owner's obligations under this Agreement. My rights under this Agreement belong only to me, I cannot transfer or assign them to anyone else. You may transfer and assign your rights and obligations under this Agreement and the Mortgage at any time without my consent.

B. Additional Credit Reports and Appraisals. I authorize you to conduct such searches, verifications and evaluations (such as credit reports, appraisals and lien searches) concerning me, the Real Property and the Mortgage as you may deem necessary from time to time. I will cooperate in having the Real Property reappraised.

C. Tax Deductibility. I know that I should consult a tax adviser regarding the deductibility of interest and charges.

D. Applicable Law. I agree that this Agreement is to be governed by federal law and, to the extent not preempted by federal law, by the laws of the state where the Real Property is located.

E. Application of Payments. You may apply payments and proceeds of the Real Property in such order as you shall deem advisable or as otherwise required by applicable law.

F. Failure to Perform. If I violate or fail to perform any term or condition of this Agreement (or the Mortgage), you may (but are under no obligation to) perform on my behalf. All costs you incur will be added to the unpaid principal of my Account and finance charges will be figured at the rates described above. I agree to pay these costs and finance charges on demand. Your performance of any of my obligations will not be a waiver of any of your rights or remedies under this Agreement.

G. Waiver of Jury Trial. **I waive my right to a jury trial concerning any enforcement dispute arising under this Agreement.**

H. Complete Understanding of the Parties. There are no oral agreements concerning this Agreement. This Agreement will not be amended or modified orally. If any provision of this Agreement is held to be void or unenforceable, the rest of this Agreement shall remain in effect.

LOAN #: ▮▮▮▮▮

I.  **Waiver of Notice.** I waive presentment, demand, protest, notice of default, nonpayment, partial payments and all other notices and formalities in connection with the delivery, acceptance, performance, default or enforcement of this Agreement, except those notices that are required by federal Regulation Z or other applicable federal or state statutes or regulations.

J.  **Meaning of Words.** All words in this Agreement will be read to be of such gender and number as the context may require. The section headings in this Agreement are for convenience and do not limit or amend any of the Agreement's provisions. Any list of conditions or events in this Agreement preceded by the phrase "such as" is not intended as a full or comprehensive list, but merely as a set of examples of such conditions or events. Other conditions or events are intended to be included to the fullest extent permitted under federal and state law, even if different from the listed conditions or events.

K.  **Payment Marked "Payment in Full."** I agree not to submit any checks to you in payment of my Account marked "Payment in Full" or similar wording unless the amount of the check is equal to the total amount then owing on my Account. If I do submit a check to you marked "Payment in Full" or similar wording for a sum less than the total amount then owing on my Account, you may accept it in partial payment of my Account but will not be bound by the "Payment in Full" or similar notation. **Communications concerning a dispute as to amounts owing on my Account, including any checks submitted to you as full satisfaction of my Account, must be sent to** Countrywide Bank, N.A.
P.O. Box 5170, Simi Valley, CA 93062-5170

L.  **Enforcement.** You can accept any late or partial payment or otherwise waive or delay enforcing your rights under this Agreement and still exercise your rights at a later time.

M.  **Notices.** Except for any notice required under applicable law to be given in another manner, (a) any notice to me provided for in this Agreement shall be given by delivering it or by mailing such notice to me by regular first class mail, addressed to me at my last address appearing on your records or at such other address as I may designate by written notice to you as provided in this paragraph 18.M and (b) any notice to you provided for in this Agreement shall be given by mailing such notice to you by certified mail, return receipt requested, at Countrywide Bank, N.A.
P.O. Box 5170, Simi Valley, CA 93062-5170
or to such other address as you may designate by written notice to me as provided in this paragraph 18.M.

N.  **Riders/Addenda.** The covenants and agreements of each of the riders/addenda checked below are incorporated into and supplement and amend the terms of this Agreement.

☐ No Cost Addendum
☐ _____ Addendum
☒ Billing Rights Statement

☐ _____ Rider
☐ _____

BY SIGNING BELOW, (1) I AGREE THAT I HAVE READ ALL PAGES OF THIS AGREEMENT INCLUDING ANY RIDERS/ADDENDA, (2) I AGREE AND INTEND TO BE LEGALLY BOUND BY ALL OF ITS TERMS AND CONDITIONS, INCLUDING ANY TERMS AND CONDITIONS LISTED IN ANY RIDERS/ADDENDA, AND (3) I ALSO ACKNOWLEDGE RECEIVING A COMPLETED COPY OF THIS AGREEMENT AND ANY RIDERS/ADDENDA. I ALSO ACKNOWLEDGE THAT I RECEIVED A COPY OF YOUR HOME EQUITY EARLY DISCLOSURE ENTITLED, "IMPORTANT TERMS OF OUR HOME EQUITY LINE OF CREDIT", THE HOME EQUITY BROCHURE ENTITLED, "WHEN YOUR HOME IS ON THE LINE" AND TWO COPIES OF THE HOME EQUITY LINE OF CREDIT NOTICE OF RIGHT TO CANCEL.

_____ _____
Borrower: ROBERTA LINDERMAN                          Date

_____ _____
Borrower:                                            Date

_____ _____
Borrower:                                            Date

_____ _____
Borrower:                                            Date

# **APPENDIX C**

Doc#: 1500655173 fee: $72.00
Date: 01/06/2015 01:02 PM Pg: 1 of 43
Cook County Recorder of Deeds
*RHSP:$9.00 RPRF:$1.00 FEES Applied

# Home Affordable Modification Agreement
## Servicer Copy 1

Investor Loan # _____ 1700022132 _____

Prepared by: Anna Kublitskaya
After Recording Return To:
Bank of America, N.A.
11802 Ridge Parkway, Ste 100 HRM
Home Retention
Broomfield, CO 80021

APN: 12-25-434-044-0000

This document was prepared by Bank of America, N.A.

469519-7777

ORIG.MTG $ 294,083.20

NEW MTG $ 358,463.27

NEW MONEY $ 64,380.07

[Space Above This Line For Recording Data]

# HOME AFFORDABLE MODIFICATION AGREEMENT

Borrower ("I")[1]: ROBERTA LINDERMAN
Original Lender/Beneficiary Lender or Servicer ("Lender"): Bank of America, N.A.
Date of first lien mortgage, deed of trust, or security deed ("Mortgage") and
Note ("Note"): November 2, 2005
Loan Number: 3010175831660707
Property Address *(See Exhibit A for Legal Description if applicable)*
("Property"): 2427 N 75th Ave Unit 20, Elmwood Park, IL 60707
See Exhibit B for assignments of record if applicable.

If my representations and covenants in Section 1 continue to be true in all material respects, then this Home Affordable Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized

Prev. Rec. Info: 11/22/2005 Instr: 0532042076

1 If more than one Borrower or Mortgagor is executing this document, each is referred to as "I". For purposes of this document words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

MHA-413193

8116 06-09
PKG 11/C3_30-11

terms used in this Agreement and not defined have the meaning given to them in Loan Documents.

I understand that after I sign and return two copies of this Agreement to the Lender, the Lender will send me a signed copy of this Agreement. This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1.  **My Representations and Covenants.** I certify, represent to Lender, covenant and agree:

    A.  I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents or my default is imminent, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;

    B.  Either I have not been displaced and one of the borrowers signing this Agreement lives in the Property as a principal residence or lived in the Property as a principal residence immediately prior to being displaced; or I am currently displaced and (i) I intend to re-occupy the Property as a principal residence in the future, (ii) I do not own any single-family real estate other than the subject Property, and (iii) the Property has not been condemned

    C.  There has been no impermissible change in the ownership of the Property since I signed the Loan Documents. A permissible change would be any transfer that the lender is required by law to allow, such as a transfer to add or remove a family member, spouse or domestic partner of the undersigned in the event of a death, divorce or marriage;

    D.  I have provided documentation for all income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for the Home Affordable Modification Program ("Program"));

    E.  Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct;

    F.  If Lender requires me to obtain credit counseling in connection with the Program, I will do so; and

    G.  I have made or will make all payments required under a trial period plan.

H. I was discharged in a Chapter 7 bankruptcy proceeding subsequent to the execution of the Loan Documents. Based on this representation, Lender agrees that I will not have personal liability on the debt pursuant to this Agreement.

2. **Acknowledgements and Preconditions to Modification.** I understand and acknowledge that:

   A. If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that any of my representations in Section 1 are no longer true and correct or any covenant in Section 1 has not been performed, the Loan Documents will not be modified and this Agreement will terminate. In that event, the Lender will have all of the rights and remedies provided by the Loan Documents; and

   B. I understand that the Loan Documents will not be modified unless and until (i) the Lender accepts this Agreement by signing and returning a copy of it to me, and (ii) the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

3. **The Modification.** If my representations and covenants in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on December 1, 2014 (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. I understand that if I have failed to make any payments as a precondition to this modification under a trial period plan, this modification will not take effect. The first modified payment was meant to be due on December 1, 2014. However, due to the adjustment of your final modification your first payment will actually be due on 1st of February, 2015.

   A. The Maturity Date will be: November 1, 2054.

B. The modified principal balance of my Note will include all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, collectively, "Unpaid Amounts") less any amounts paid to the Lender but not previously credited to my Loan. Any fees or charges incurred in connection with the servicing of your loan which were not invoiced before we calculated the Unpaid Amounts will appear on your monthly statement under "Fees and Charges." These amounts may be paid when billed or at any time afterward. They will not accrue interest or late fees. If they remain unpaid, they must be satisfied at the earlier of: (i) the date you sell or transfer an interest in the Property, (ii) the date you pay the entire New Principal Balance, or (iii) the Maturity Date. The new principal balance of my Note will be $358,463.27 (the "New Principal Balance"). I understand that by agreeing to add the Unpaid Amounts to the outstanding principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. I also understand that this means interest will now accrue on the unpaid interest that is added to the outstanding principal balance, which would not happen without this Agreement.

C. $82,317.56 of the New Principal Balance shall be deferred (the "Deferred Principal Balance") and I will not pay interest or make monthly payments on this amount. The New Principal Balance less the Deferred Principal Balance shall be referred to as the "Interest Bearing Principal Balance" and this amount is $276,145.71. Interest at the rate of 2.000% will begin to accrue on the Interest Bearing Principal Balance as of November 1, 2014 and the first new monthly payment on the Interest Bearing Principal Balance will be due on February 1, 2015. My payment schedule for the modified Loan is as follows:

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| Years 1-5 | 2.000% | November 1, 2014 | $836.24 | $581.73 May adjust periodically | $1,417.97 May adjust periodically | December 1, 2014 | 60 |
| Year 6 | 3.000% | November 1, 2019 | $971.52 | May adjust periodically | May adjust periodically | December 1, 2019 | 12 |
| Years 7-40 | 4.000% | November 1, 2020 | $1,114.31 | May adjust periodically | May adjust periodically | December 1, 2020 | 408 |

*The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly.

The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable, step or simple interest rate.

I understand that, if I have a pay option adjustable rate mortgage loan, upon modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified Loan will be the minimum payment that will be due each month for the remaining term of the Loan. My modified Loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest being added to the outstanding principal balance.

I understand that any shortfalls between the actual payments I made after 12/01/2014, including any missed payments, and payments that are due under the modification will be advanced. This amount will not accrue interest and is referred as "Other Deferred Amounts." The Other Deferred Amounts total is $2,835.94.

THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.

D.  I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

E.  If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3C.

F.  I agree to pay in full the Deferred Principal Balance and any other amounts still owed under the Loan Documents by the earliest of: (i) the date I sell or transfer an interest in the Property, (ii) the date I pay the entire Interest Bearing Principal Balance, or (iii) the Maturity Date.

4. **Additional Agreements.** I agree to the following:

A. That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co-borrower is deceased; (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) the Lender has waived this requirement in writing.

B. That this Agreement shall supersede the terms of any modification, forbearance, trial period plan or other workout plan that I previously entered into with Lender.

C. To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

D. That this Agreement constitutes notice that the Lender's waiver as to payment of Escrow Items, if any, has been revoked, and I have been advised of the amount needed to fully fund my escrow account.

E. That the Loan Documents as modified by this Agreement are duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

F. That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

G.  That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, if all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. Lender shall not exercise this option if state or federal law, rules or regulations prohibit the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

H.  That, as of the Modification Effective Date, I understand that the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

I.  That, as of the Modification Effective Date, if any provision in the Note or in any addendum or amendment to the Note allowed for the assessment of a penalty for full or partial prepayment of the Note, such provision is null and void.

J.  That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage Loan is in first lien position and/or is fully enforceable upon modification and that if, under any circumstance and not withstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s) and/or subordination agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void. I also agree to allow Lender to attach an Exhibit A to this loan modification which will include a Legal Description, recording information of the original security instrument, and any other relevant information required by a County Clerk's Office to allow for recording if and when recording becomes necessary for Lender.

K. That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement. I understand that either a corrected Agreement or a letter agreement containing the correction will be provided to me for my signature. At Lender's option, this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrective documentation, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the Home Affordable Modification Program.

L. That Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity. In addition, I understand and consent to the disclosure of my personal information and the terms of the trial period plan and this Agreement by Lender to (i) the U.S. Department of the Treasury, (ii) Fannie Mae and Freddie Mac in connection with their responsibilities under the Home Affordability and Stability Plan; (iii) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan(s); (iv) companies that perform support services for the Home Affordable Modification Program and the Second Lien Modification Program; and (v) any HUD certified housing counselor.

M. That if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the Loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the Note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the Note. All documents the Lender requests of me under this Section 4.N. shall be referred to as "Documents." I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

N.  If my Loan Documents govern a home equity loan or line of credit, then I agree that as of the Modification Effective Date, I am terminating my right to borrow new funds under my home equity loan or line of credit. This means that I cannot obtain additional advances, and must make payments according to this Agreement. (Lender may have previously terminated or suspended my right to obtain additional advances under my home equity loan or line of credit, and if so, I confirm and acknowledge that no additional advances may be obtained.)

O.  BORROWERS PROTECTION PLAN   If I have a Loan with Borrowers Protection Plan® ("BPP") under my Loan Documents, then I understand and agree that, unless I notify Lender of my request to cancel BPP or my BPP has already been cancelled or terminated in accordance with its terms, my BPP will remain on my Loan, as modified in accordance with this Agreement, and will continue to be governed by the terms of my Borrowers Protection Plan Addendum, which is the contract containing the terms and conditions of BPP that I received at closing of my original Loan.

I understand that I may cancel BPP at any time by calling 1.866.554.2676. If I notify the Lender of my request to cancel BPP within sixty (60) days after the Modification Effective Date, I will receive a refund of any BPP fees I pay with respect to any period after the Modification Effective Date. I further understand that BPP on my Loan may have already been cancelled or terminated by its terms, such as if any monthly fee for BPP has remained unpaid 90 days after its due date.

For purposes of my modified Loan, the "Monthly Payment" under the Borrowers Protection Plan Addendum will be the monthly payment of principal and/or interest as modified under this Agreement. With the exception of BPP benefits based on the outstanding balance of my Loan (if any), benefits under the BPP on my modified Loan will be calculated based on this new Monthly Payment amount, subject to the terms of the Borrowers Protection Plan Addendum.

For purposes of my modified Loan, the monthly fee for BPP, which is the monthly amount charged to me for BPP, will be recalculated based on the percentage set forth in my Borrowers Protection Plan Addendum (or Borrowers Protection Plan Confirmation Letter, as applicable). I understand that the monthly fee for BPP, as a percentage of my monthly payment of principal and/or interest as modified under this Agreement, may be higher if the monthly payment under my modified Loan is or becomes higher than the monthly payment that was due on my Loan prior to modification under this Agreement. The monthly fee for BPP will be payable at the same time and place as payments of principal and/or interest under my modified Loan. The "Protection Date" under the Borrowers Protection Plan Addendum, which is the date upon which my BPP became effective, and the "Expiration Date" under the Borrowers Protection Plan Addendum, which is the date upon which my BPP will automatically expire, will not be changed by this Agreement. I will refer to my Borrowers Protection Plan Addendum for complete terms and conditions of my BPP.

If I have experienced a qualifying event that is eligible for benefits under BPP, I should contact Bank of America immediately by calling 1.866.317.5116.

P.  **OPTIONAL PRODUCTS PURCHASED AFTER CLOSING**  I understand and agree that any optional product(s) I may have purchased after the closing of my Loan, the cost for which I agreed to have added to my Total Monthly Payment: (a) will remain in force so long as I add the amount due and owing to my Total Monthly Payment each month; and (b) will continue to be governed by the terms of the documents the provider of the optional product delivered to me ("Governing Documents"), unless (i) I notify the provider of the optional product of my request to cancel; or (ii) I fail to pay any and all amounts payable when due, at which time the optional product may terminate as provided under the terms of the Governing Documents.  I understand that if I have questions regarding any optional product(s) I may have purchased, I should contact Bank of America by calling 1.800.641.5298.

In Witness Whereof, the Lender and I have executed this Agreement.
(Signatures must be signed exactly as printed, original signature required, no
photocopies accepted)

Roberta Linderman
(Must Be Signed Exactly As Printed)

_12/18/14_
MM/DD/YYYY

_Amanda Murillo_
Witness Signature

_Amanda Murillo_
Witness Printed Name

_12/18/14_
Witness Date

_____[Space below this line for Acknowledgement]_____

STATE OF _Illinois_
COUNTY OF _Cook_

On the _8th_ day of _December_ in the year _2014_ before me _Debra Starke_
Notary Public, personally appeared <u>Roberta Linderman</u>, personally known to me or
proved to me on the basis of satisfactory evidence to be the person(s) whose name(s)
is (are) subscribed to the within instrument and acknowledged to me that he/she/they
executed the same in his/her/their authorized capacity(ies), and that by his/her/their
signature(s) on the instrument, the person(s), or entity upon behalf of which the
person(s) acted, executed the instrument.
WITNESS my hand and official seal.

_Debra Starke_ Notary Signature

_Debra Starke_ Notary Public Printed Name Please Seal Here

_December 27, 2016_ Notary Public Commission Expiration Date

```
"OFFICIAL SEAL"
DEBRA STARKE
Notary Public - State of Illinois
My Commission Expires December 27, 2016
```

MHA-413193

8116 08-09
PKG 11/C3_30-11

**DO NOT WRITE BELOW THIS LINE.**
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

THIS SECTION IS FOR INTERNAL USE ONLY

Bank of America, N.A., for itself or as successor by merger to BAC Home Loans
Servicing, LP
    By: Urban Settlement Services, LLC, its attorney in fact

By: _____     Dated: **DEC 3 1 2014**

Name: **LAURA DUNNELL**
Title : **ASSISTANT SECRETARY**

[Space below this line for Acknowledgement]_____

STATE OF _Colorado_
COUNTY OF _Broomfield_

On _31_ day of _Dec_ in the year _2014_ before me, **SHERRY LYNN BROWN**
Notary Public, personally appeared _____ **LAURA DUNNELL**
Assistant Secretary of Urban Settlement Services, LLC., attorney in fact for Bank of
America, N.A., personally known to me (or proved to me on the basis of satisfactory
evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument
and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the
person(s), or entity upon behalf of which the person(s) acted, executed the instrument.
WITNESS my hand and official seal.

_____ Notary Signature

**SHERRY LYNN BROWN** _____ Notary Public Printed Name Please Seal Here

**DEC 2 7 2015** _____ Notary Public Commission Expiration Date

**SHERRY LYNN BROWN**
**NOTARY PUBLIC, STATE OF COLORADO**
My Comm. Expires December 27, 2015

MHA-413193

8118 08-09
PKG 11/C3_30-11

# EXHIBIT "A"

## LEGAL DESCRIPTION

PARCEL 1: LOT 3 IN THE PLAT OF CENTRUM'S CENTRAL PARK SUBDIVISION IN THE
WEST HALF OF THE SOUTHEAST QUARTER OF SECTION 25, TOWNSHIP 40 NORTH, RANGE
12, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS. PARCEL
2: NONEXCLUSIVE, PERPETUAL AND RECIPROCAL EASEMENT FOR THE BENEFIT OF
PARCELS 1 AS CREATED BY THE RECIPROCAL EASEMENT AGREEMENT RECORDED AS
DOCUMENT 0417033216, FOR INGRESS AND EGRESS, UTILITIES AND TEMPORARY
CONSTRUCTION OVER THE FOLLOWING DESCRIBED REAL ESTATE:  OUTLOT B IN PLAT
OF CENTRUM'S CENTRAL PARK SUBDIVISION AFORESAID.

# **APPENDIX D**

P.O. BOX 51850
LIVONIA MI 48151-5850
RETURN SERVICE REQUESTED



# shellpoint®



S-SFRECS20  L-0228  R-131
PKB84O00D00399 - 787686092 I01594
ROBERTA LINDERMAN



| CONTACT INFORMATION | |
|---|---|
| Correspondence: | P.O. Box 10826 |
| | Greenville, SC 29603-0826 |
| Business Hours: | Monday - Friday: 8:00AM-9:00PM ET |
| | Saturday: 10:00AM-2:00PM ET |
| Phone: | 800-365-7107 |
| Website: | www.shellpointmtg.com |

Loan Number:
Property:

07/11/2024

## Welcome to Shellpoint Mortgage Servicing!

Dear Homeowner:

You recently received a letter from us about Specialized Loan Servicing ("SLS") having a new name. As part of this transition, your loan is now serviced by **Shellpoint Mortgage Servicing.**

We are committed to providing you with best-in-class service while managing your mortgage account. In addition, we offer upgraded technology, enhanced security, our new mobile app and the MyAccount loan portal.

### Key Things to Remember

- Your loan number **1007553030** remains the same
- Your mortgage terms **did not change** as a result of this transition
- **Shellpoint Mortgage Servicing** now handles all aspects of servicing your loan, including processing payments as well as managing and paying your taxes and insurance if they are escrowed
- If your mortgage payments were automatically drafted from your bank account, monthly, semi-monthly, or bi-weekly, those arrangements have carried over automatically. **You do not need to update any information. However, we no longer offer weekly ACH.** If you wish to continue to take advantage of automatic payment drafts, please set up your new ACH payment schedule through your online account before your next due date.
- Within 30 days of this letter, you will start receiving billing statements from **Shellpoint Mortgage Servicing**

### Your Online Account

Your loan is active in your new online account. Visit **www.shellpointmtg.com** and click **Sign In**. Enter your existing username from your previous SLS online account. Please follow the on-screen prompts to complete your account setup, including creating a new password, setting up Multi-Factor Authentication (MFA) and, in some cases, creating a new username. Once complete, your new account is all set up!

### Making Payments

If you use a bill pay service or mail your payment, please **update your payee name and address to Shellpoint Mortgage Servicing** P.O. Box 60535 City of Industry, CA 91716-0535. Allow time for mail transit.

Newrez LLC dba Shellpoint Mortgage Servicing NMLS ID 3013
0228 131 Loan Number:                    Version: 05222024                    P I0000010102J0400

**Important Bankruptcy Notice**
If you are in bankruptcy or have received a bankruptcy discharge of this debt, this notice is to advise you of the status of your mortgage loan. If your debt has been discharged in accordance with applicable bankruptcy laws, or if you are subject to the automatic stay of Section 362 of the United States Bankruptcy Code, this notice is neither a demand for payment or a notice of personal liability. However, this may be a notice of possible enforcement of the lien against the collateral property that was not discharged in your bankruptcy.

**We're Here to Help**
It's our privilege to be your mortgage servicer, and we're committed to providing you with the best possible service. If you have any questions or need assistance, please contact our Customer Care Team at 800-365-7107 Monday through Friday 8:00AM-9:00PM, and Saturday 10:00AM-2:00PM ET.

**¿Hablas español?**
Esta carta contiene información importante sobre su préstamo hipotecario. Si usted no entiende el contenido de esta carta, por favor contacte a uno de nuestros representantes que hablan español al número 800-365-7107.

Sincerely,

Shellpoint Mortgage Servicing

# **APPENDIX E**

# shellpoint®




P.O. BOX 51850
LIVONIA MI 48151-5850
RETURN SERVICE REQUESTED

|ᴵᵗᵗᵗᵗᵗᵗᵗᵗᵗᵗᵗᵗᵗ|
S-SFRECS20 L-1237 R-330
PKFDYM00400297 - 791104560 I01763
ROBERTA LINDERMAN



| CONTACT INFORMATION | |
|---|---|
| Correspondence: | P.O. Box 10826 |
| | Greenville, SC 29603-0826 |
| Business Hours: | Monday - Friday: 9:00AM-9:00PM |
| | Saturday: 10:00AM-2:00PM |
| Phone Number: | 800-268-9706 |
| Fax: | 866-467-1137 |
| Website: | www.shellpointmtg.com |

Loan Number:
Principal Balance: $87,080.13
Property Address:

08/02/2024

Dear Homeowner,

As you are aware, your loan is delinquent. We have made several attempts to contact you; however, we have been unsuccessful.

When default occurs, it is extremely important that you maintain at least a bi-weekly contact with our office, so we can discuss what options may be available to you.

We understand that everyone's circumstances are different, and sometimes a hardship may prevent our valued customers from paying on their loan.

Your utmost cooperation is extremely important and is required in order to resolve this matter. Therefore, we would appreciate you contacting us immediately, so we can determine why the default has occurred and explain to you what your most viable options are.

For future communications regarding the status of your loan or your application for loss mitigation, you can visit our Borrower Web Portal at www.shellpointmtg.com to apply for assistance, upload application documents, or contact us through our Secure Message Center. You can also contact our Single Point of Contact ("SPOC") department by phone at 800-268-9706. Documents can also be faxed to us at 866-467-1137. Please reference your loan number when contacting us regarding this request.

Sincerely,

Shellpoint Mortgage Servicing

**Please read the following important notices as they may affect your rights.**

Newrez LLC dba Shellpoint Mortgage Servicing is a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose. Newrez LLC dba Shellpoint Mortgage Servicing's NMLS ID is 3013. 

If you are a customer in bankruptcy or a customer who has received a bankruptcy discharge of this debt: please be advised that this notice is to advise you of the status of your mortgage loan. This notice constitutes neither a demand for payment nor a notice of personal liability to any recipient hereof, who might have received a discharge of such debt in accordance with applicable bankruptcy laws or who might be subject to the automatic stay of Section 362 of the United States Bankruptcy Code.

**Attention Servicemembers and Dependents: The federal Servicemembers Civil Relief Act and certain state laws provide important protections for you, including interest rate protections and prohibiting foreclosure under most circumstances during and twelve months after the servicemember's military or other service. Counseling for covered servicemembers is available from Military OneSource (800-342-9647) and the United States Armed Forces Legal Assistance or other similar agencies. For more information, please visit the Military OneSource website www.militaryonesource.mil/.**

**Notice of Error or Information Request Address:** You have certain rights under Federal law related to resolving errors in the servicing of your loan and requesting information about your loan. If you want to request information about your loan or if you believe an error has occurred in the servicing of your loan and would like to submit an Error Resolution or Informational Request, please write to us. Additionally, if you believe we have furnished inaccurate information to credit reporting agencies, please write to us with specific details regarding those errors and any supporting documentation that you have and we will assist you. Error Resolution, including concerns of inaccurate information sent to credit reporting agencies, or requests for information should be sent to the following address:  Shellpoint Mortgage Servicing P.O. Box 10826 Greenville, SC 29603-0826

We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.

A successor in interest is someone who acquires an ownership interest in a property secured by a mortgage loan by transfer upon the death of a relative, as a result of a divorce or legal separation, through certain trusts, between spouses, from a parent to a child, or when a borrower who is a joint tenant or tenant by the entirety dies. If you are a successor in interest, or you think you might be, please contact by phone, mail or email to start the confirmation process.

**Our system of record has your preferred language as English.**

**If you prefer to receive communication in a language other than English, please contact us at 800-268-9706 to speak with a translator in your preferred language about the servicing of your loan or a document you received.**

**Si prefiere recibir las comunicaciones en otro idioma que no sea el inglés, por favor, contáctenos en el 800-268-9706 para hablar con un traductor en el idioma de su preferencia sobre la gestión de su préstamo o cualquier documento que haya recibido.**

如果您要使用英语以外的其他语言进行交流，请致电 800-268-9706，我们将根据您首选的语言安排相应的译员，与您就贷款服务事项或您所接收的文件进行商讨。

Please note that we operate as Newrez Mortgage LLC dba Shellpoint Mortgage Servicing in Arkansas and Texas.

Illinois
The primary regulatory authority having jurisdiction over the residential lending activities of Newrez LLC dba Shellpoint Mortgage Servicing is the Federal Trade Commission. Their information is below:

Federal Trade Commission
600 Pennsylvania Ave., NW
Washington, DC 20580

Illinois
La autoridad competente de regulación primaria sobre las actividades de préstamos residenciales de Newrez LLC dba Shellpoint Mortgage Servicing es la Comisión Federal de Comercio. La información es a continuación:

Federal Trade Commission
600 Pennsylvania Ave., NW
Washington, DC 20580

Loan #: ███████ 

## Is your contact information accurate?

Please provide your most up-to-date contact information so that we can ensure you receive notifications and any information we may send in the future.

You may visit our website at www.shellpointmtg.com to update your contact information or return this completed form to us in the envelope we have provided. Our toll free number is 800-268-9706, we are available Monday through Friday 9:00AM-9:00PM, and Saturday 10:00AM-2:00PM ET.

*Please make sure below address shows in window*

Shellpoint Mortgage Servicing
P.O. Box 10826
Greenville, SC 29603-0826

**Contact Information is as follows:**

**Home Mailing Address**
☐ Has not changed
☐ Has changed, please direct future correspondence to:

_____

_____

_____

**Best Phone Number**

☐ Cell _____
*By providing the above cell phone number, you hereby consent to Shellpoint Mortgage Servicing Servicing calling you at this number using our automatic dialing technology.*

☐ Home _____

☐ Work _____
*Please do not provide a work phone number if your employer prohibits you from receiving calls from Shellpoint Mortgage Servicing while at work.*

**Best Time to Reach**
☐ Morning
☐ Afternoon
☐ Evening

**Authorized E-mail**
☐ I do not want *Shellpoint Mortgage Servicing* to contact me by email.

☐ Email _____
*By providing the above email address, you hereby consent to communication with Shellpoint Mortgage Servicing through email. You may revoke this consent at any time. If the email address you have provided is one issued by your employer, you understand and acknowledge that any email communication by way of this email address may be viewed by your employer. You also represent to Shellpoint Mortgage Servicing that your employer does not prohibit communication with Shellpoint Mortgage Servicing through this email address. Additionally, if the email address you have provided is available for use by any individuals who are not authorized to discuss your account information with Shellpoint Mortgage Servicing, you understand and acknowledge that any email communication by way of this email address may be viewed by those individuals with access.*

# **APPENDIX F**



P.O. BOX 51850
LIVONIA MI 48151-5850
RETURN SERVICE REQUESTED



**Phone Number:** 800-268-9706
**Fax:** 866-467-1137
lossmitigation@shellpointmtg.com
Mon - Thurs: 9:00AM-9:00PM
Fri: 9:00AM-9:00PM
Sat: 10:00AM-2:00PM

S-SFRECS20  L-1200-IL  R-330
PKQJT900200374 - 798260174 I01121
ROBERTA LINDERMAN



| Loan Number: |   |
| Property: |   |

10/03/2024

## GRACE PERIOD NOTICE

YOUR LOAN IS MORE THAN 30 DAYS PAST DUE. YOU MAY BE EXPERIENCING FINANCIAL DIFFICULTY. IT MAY BE IN YOUR BEST INTEREST TO SEEK APPROVED HOUSING COUNSELING. YOU HAVE A GRACE PERIOD OF 30 DAYS FROM THE DATE OF THIS NOTICE TO OBTAIN APPROVED HOUSING COUNSELING. DURING THE GRACE PERIOD, THE LAW PROHIBITS US FROM TAKING ANY LEGAL ACTION AGAINST YOU. YOU MAY BE ENTITLED TO AN ADDITIONAL 30 DAY GRACE PERIOD IF YOU OBTAIN HOUSING COUNSELING FROM AN APPROVED HOUSING COUNSELING AGENCY. A LIST OF APPROVED COUNSELING AGENCIES MAY BE OBTAINED FROM THE ILLINOIS DEPARTMENT OF FINANCIAL AND PROFESSIONAL REGULATION.

Illinois Department of Financial and Professional Regulation
Consumer Hotline Number: (844) 768-1713
Website: www.idfpr.com

Shellpoint Mortgage Servicing

Address: P.O. Box 10826
Greenville, SC 29603-0826

Phone:    800-268-9706
Fax:      866-467-1137

Sincerely,
Shellpoint Mortgage Servicing
800-268-9706

Newrez LLC dba Shellpoint Mortgage Servicing NMLS ID 3013

1200-IL 330 Loan Number: ▮▮▮▮  Version: 07052024          P I0000010102J0400

# APPENDIX G

# shellpoint

Sent Via First-Class Mail®

P.O. Box 10826
Greenville, SC 29603
Phone: 800-268-9706
Fax: 866-467-1137
www.shellpointmtg.com

11/05/2024

ROBERTA LINDERMAN



Loan Number:
Property Address:

**Attention: Our records show that you have received a bankruptcy discharge. This letter is for informational purposes only and is required to be sent pursuant to the terms of your contract and state law in order to notify you of your rights. THIS IS NOT A DEMAND FOR PAYMENT. This letter only pertains to our security interest in the Property.**

Dear ROBERTA LINDERMAN:

This letter is formal notice by Shellpoint Mortgage Servicing, the Servicer of the above-referenced loan acting on behalf of The Bank of New York Mellon f/k/a The Bank of New York as successor Indenture trustee to JPMorgan Chase Bank, National Association for CWHEQ Revolving Home Equity Loan Trust, Series 2006-F, that you are in default under the terms of the documents creating and securing your Loan described above, including the Note and Deed of Trust/Mortgage/Security Deed ("Security Instrument"), for failure to pay amounts due.

You have a right to cure your default. To cure the default, you must pay the full amount of the default on this loan by 12/10/2024 (or if said date falls on a Saturday, Sunday, or legal holiday, then on the first business day thereafter). Failure to cure the default on or before this date may result in acceleration of the sums secured by the Security Instrument, foreclosure by judicial proceeding and sale of the property.

As of the date of this notice, the total amount required to cure the default is $140,111.82, which consists of the following:

| | | | |
|---|---|---|---|
| Next Payment Due Date: | | | 09/20/2008 |
| | | | $140,066.82 |
| Total Monthly Payments Due: | | | $1,277.80 |
| 09/20/2008 | | at | $128.60 |
| 10/20/2008 | | at | $128.60 |
| 11/20/2008 | | at | $128.60 |
| 12/20/2008 | | at | $128.60 |
| 01/20/2009 | | at | $128.60 |
| 02/20/2009 | | at | $128.60 |
| 03/20/2009 | | at | $128.60 |
| 04/20/2009 | | at | $128.60 |
| 05/20/2009 | | at | $128.60 |
| 06/20/2009 | | at | $128.60 |
| 07/20/2009 | | at | $128.60 |
| 08/20/2009 | | at | $128.60 |



GEN_DEMAND   Rev. 04/2024
Page 1 of 6

2395485672

| | | |
|---|---|---|
| 09/20/2009 | at | $128.60 |
| 10/20/2009 | at | $128.60 |
| 11/20/2009 | at | $128.60 |
| 12/20/2009 | at | $128.60 |
| 01/20/2010 | at | $128.60 |
| 02/20/2010 | at | $128.60 |
| 03/20/2010 | at | $128.60 |
| 04/20/2010 | at | $128.60 |
| 05/20/2010 | at | $128.60 |
| 06/20/2010 | at | $128.60 |
| 07/20/2010 | at | $128.60 |
| 08/20/2010 | at | $128.60 |
| 09/20/2010 | at | $128.60 |
| 10/20/2010 | at | $128.60 |
| 11/20/2010 | at | $128.60 |
| 12/20/2010 | at | $128.60 |
| 01/20/2011 | at | $128.60 |
| 02/20/2011 | at | $128.60 |
| 03/20/2011 | at | $128.60 |
| 04/20/2011 | at | $128.60 |
| 05/20/2011 | at | $128.60 |
| 06/20/2011 | at | $128.60 |
| 07/20/2011 | at | $128.60 |
| 08/20/2011 | at | $128.60 |
| 09/20/2011 | at | $128.60 |
| 10/20/2011 | at | $128.60 |
| 11/20/2011 | at | $128.60 |
| 12/20/2011 | at | $128.60 |
| 01/20/2012 | at | $128.60 |
| 02/20/2012 | at | $128.60 |
| 03/20/2012 | at | $128.60 |
| 04/20/2012 | at | $128.60 |
| 05/20/2012 | at | $128.60 |
| 06/20/2012 | at | $128.60 |
| 07/20/2012 | at | $128.60 |
| 08/20/2012 | at | $128.60 |
| 09/20/2012 | at | $128.60 |
| 10/20/2012 | at | $128.60 |
| 11/20/2012 | at | $128.60 |
| 12/20/2012 | at | $128.60 |
| 01/20/2013 | at | $128.60 |
| 02/20/2013 | at | $128.60 |
| 03/20/2013 | at | $128.60 |
| 04/20/2013 | at | $128.60 |
| 05/20/2013 | at | $128.60 |
| 05/25/2013 | at | $554.69 |
| 06/20/2013 | at | $480.73 |
| 07/20/2013 | at | $554.69 |
| 08/20/2013 | at | $573.18 |
| 09/20/2013 | at | $573.18 |
| 10/20/2013 | at | $554.69 |
| 11/20/2013 | at | $573.18 |
| 12/20/2013 | at | $554.69 |

| | | |
|---|---|---|
| 01/20/2014 | at | $573.18 |
| 02/20/2014 | at | $573.18 |
| 03/20/2014 | at | $517.71 |
| 04/20/2014 | at | $573.18 |
| 05/20/2014 | at | $554.69 |
| 06/20/2014 | at | $573.18 |
| 07/20/2014 | at | $554.69 |
| 08/20/2014 | at | $573.18 |
| 09/20/2014 | at | $573.18 |
| 10/20/2014 | at | $554.69 |
| 11/20/2014 | at | $573.18 |
| 12/20/2014 | at | $554.69 |
| 01/20/2015 | at | $573.18 |
| 02/20/2015 | at | $573.18 |
| 03/20/2015 | at | $517.71 |
| 04/20/2015 | at | $573.18 |
| 05/20/2015 | at | $554.69 |
| 06/20/2015 | at | $573.18 |
| 07/20/2015 | at | $554.69 |
| 08/20/2015 | at | $573.18 |
| 09/20/2015 | at | $573.18 |
| 10/20/2015 | at | $554.69 |
| 11/20/2015 | at | $573.18 |
| 12/20/2015 | at | $554.69 |
| 01/20/2016 | at | $573.18 |
| 02/20/2016 | at | $591.67 |
| 03/20/2016 | at | $553.50 |
| 04/20/2016 | at | $591.67 |
| 05/20/2016 | at | $572.58 |
| 06/20/2016 | at | $591.67 |
| 07/20/2016 | at | $1,056.35 |
| 08/20/2016 | at | $1,075.44 |
| 09/20/2016 | at | $1,075.44 |
| 10/20/2016 | at | $1,056.35 |
| 11/20/2016 | at | $1,075.44 |
| 12/20/2016 | at | $1,056.35 |
| 01/20/2017 | at | $1,075.44 |
| 02/20/2017 | at | $1,093.93 |
| 03/20/2017 | at | $1,034.88 |
| 04/20/2017 | at | $1,093.93 |
| 05/20/2017 | at | $1,092.14 |
| 06/20/2017 | at | $1,112.42 |
| 07/20/2017 | at | $1,092.14 |
| 08/20/2017 | at | $1,130.91 |
| 09/20/2017 | at | $1,130.91 |
| 10/20/2017 | at | $1,110.03 |
| 11/20/2017 | at | $1,130.91 |
| 12/20/2017 | at | $1,110.03 |
| 01/20/2018 | at | $1,130.91 |
| 02/20/2018 | at | $1,149.40 |
| 03/20/2018 | at | $1,084.98 |
| 04/20/2018 | at | $1,149.40 |
| 05/20/2018 | at | $1,145.82 |



| Date | | Amount |
|---|---|---|
| 06/20/2018 | at | $1,167.89 |
| 07/20/2018 | at | $1,145.82 |
| 08/20/2018 | at | $1,186.38 |
| 09/20/2018 | at | $1,186.38 |
| 10/20/2018 | at | $1,163.71 |
| 11/20/2018 | at | $1,186.38 |
| 12/20/2018 | at | $1,181.60 |
| 01/20/2019 | at | $1,204.87 |
| 02/20/2019 | at | $1,223.36 |
| 03/20/2019 | at | $1,151.78 |
| 04/20/2019 | at | $1,223.35 |
| 05/20/2019 | at | $1,199.50 |
| 06/20/2019 | at | $1,223.35 |
| 07/20/2019 | at | $1,199.50 |
| 08/20/2019 | at | $1,223.35 |
| 09/20/2019 | at | $1,223.35 |
| 10/20/2019 | at | $1,181.60 |
| 11/20/2019 | at | $1,186.38 |
| 12/20/2019 | at | $1,163.71 |
| 01/20/2020 | at | $1,167.89 |
| 02/20/2020 | at | $1,167.88 |
| 03/20/2020 | at | $1,123.75 |
| 04/20/2020 | at | $1,167.89 |
| 05/20/2020 | at | $1,038.46 |
| 06/20/2020 | at | $1,056.95 |
| 07/20/2020 | at | $1,038.46 |
| 08/20/2020 | at | $1,056.95 |
| 09/20/2020 | at | $1,056.95 |
| 10/20/2020 | at | $1,038.46 |
| 11/20/2020 | at | $1,056.95 |
| 12/20/2020 | at | $1,038.46 |
| 01/20/2021 | at | $1,056.95 |
| 02/20/2021 | at | $1,056.95 |
| 03/20/2021 | at | $1,001.48 |
| 04/20/2021 | at | $1,056.95 |
| 05/20/2021 | at | $1,038.46 |
| 06/20/2021 | at | $1,056.95 |
| 07/20/2021 | at | $1,038.46 |
| 08/20/2021 | at | $1,056.95 |
| 09/20/2021 | at | $1,056.95 |
| 10/20/2021 | at | $1,038.46 |
| 11/20/2021 | at | $1,056.95 |
| 12/20/2021 | at | $1,038.46 |
| 01/20/2022 | at | $1,056.95 |
| 02/20/2022 | at | $1,056.95 |
| 03/20/2022 | at | $1,001.48 |
| 04/20/2022 | at | $1,056.95 |
| 05/20/2022 | at | $1,056.35 |
| 06/20/2022 | at | $1,075.44 |
| 07/20/2022 | at | $1,092.14 |
| 08/20/2022 | at | $1,167.89 |
| 09/20/2022 | at | $1,167.89 |
| 10/20/2022 | at | $1,199.50 |

2395485672

| Date | | Amount |
|---|---|---|
| 11/20/2022 | at | $1,278.82 |
| 12/20/2022 | at | $1,253.18 |
| 01/20/2023 | at | $1,334.29 |
| 02/20/2023 | at | $1,371.28 |
| 03/20/2023 | at | $1,285.38 |
| 04/20/2023 | at | $1,389.76 |
| 05/20/2023 | at | $1,378.43 |
| 06/20/2023 | at | $1,408.25 |
| 07/20/2023 | at | $1,396.32 |
| 08/20/2023 | at | $1,426.74 |
| 09/20/2023 | at | $1,426.74 |
| 10/20/2023 | at | $1,414.22 |
| 11/20/2023 | at | $1,445.23 |
| 12/20/2023 | at | $1,414.22 |
| 01/20/2024 | at | $1,445.23 |
| 02/20/2024 | at | $1,445.23 |
| 03/20/2024 | at | $1,383.20 |
| 04/20/2024 | at | $1,445.23 |
| 05/20/2024 | at | $1,414.22 |
| 06/20/2024 | at | $1,445.23 |
| 07/20/2024 | at | $1,414.22 |
| 08/20/2024 | at | $1,277.80 |
| 09/20/2024 | at | $1,277.80 |
| 10/20/2024 | at | $1,246.87 |

| | |
|---|---|
| Late Charges: | $0.00 |
| Corporate Advance Balance: | $45.00 |
| Unapplied Balance: | $0.00 |

**TOTAL YOU MUST PAY TO CURE DEFAULT:**      **$140,111.82**

You can cure this default by making a payment of $140,111.82 by 12/10/2024. Please note any additional monthly payments, late charges and other charges that may be due under the Note, Security Instrument and applicable law after the date of this notice must also be paid to cure the default. You may contact our Loss Mitigation Department at 866-825-2174, Monday - Friday 9:00AM to 9:00PM and Saturday 10:00AM to 2:00PM to obtain updated payment information. You may also visit our website www.shellpointmtg.com. This letter is in no way intended as a payoff statement for your mortgage, it merely states an amount necessary to cure the current default. Please include your loan number and property address with your payment and send to:

Shellpoint Mortgage Servicing
P.O. Box 60535
City of Industry, CA 91716-0535

Overnight:
Shellpoint Mortgage Servicing
75 Beattie Place
Suite LL202
Greenville, SC 29601

**To the extent your obligation has been discharged or is subject to the automatic stay in a bankruptcy case, this notice is for informational purposes only and does not constitute a demand for payment or an attempt to collect a debt as your personal obligation. If you are represented by an attorney, please provide us with the attorney's name, address, and telephone number.**



IF YOU ARE UNABLE TO BRING YOUR ACCOUNT CURRENT, Shellpoint Mortgage Servicing offers consumer assistance programs designed to help resolve delinquencies and avoid foreclosure. These services are provided without cost to our customers. You may be eligible for a loan workout plan or other similar alternatives to foreclosure. If you would like to learn more about these programs, you may contact Ineshia Taylor at (866) 825-2174, ext. 7508, Monday - Friday 9:00AM to 9:00PM and Saturday 10:00AM to 2:00PM to discuss possible options. You may also visit our website www.shellpointmtg.com. WE ARE VERY INTERESTED IN ASSISTING YOU.

You have the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense you may have to acceleration and foreclosure.

Failure to respond to this letter may result in the loss of your property.

**Newrez LLC dba Shellpoint Mortgage Servicing is a debt collector. This is not an attempt to collect a debt due to your bankruptcy filing. Newrez LLC dba Shellpoint Mortgage Servicing's NMLS ID is 3013.**

**Attention Servicemembers and Dependents:** Servicemembers on active duty, or a spouse or dependent of such a servicemember, may be entitled to certain protections under the Servicemembers Civil Relief Act ("SCRA") regarding the servicemember's interest rate and the risk of foreclosure. SCRA and certain state laws provide important protections for you, including prohibiting foreclosure under most circumstances. If you are currently in the military service, or have been within the last twelve (12) months, **AND** joined after signing the Note and Security Instrument now in default, please notify Shellpoint Mortgage Servicing immediately. When contacting Shellpoint Mortgage Servicing as to your military service, you must provide positive proof as to your military status. Servicemembers and dependents with questions about the SCRA should contact their unit's Judge Advocate, or their installation's Legal Assistance Officer. Homeowner counseling is also available at agencies such as Military OneSource (www.militaryonesource.mil, 1-800-342-9647) and Armed Forces Legal Assistance (http://legalassistance.law.af.mil), and through HUD-certified housing counselors (https://www.hud.gov/counseling). You can also contact Ineshia Taylor toll-free at (866) 825-2174, ext. 7508 if you have questions about your rights under SCRA.

For your benefit and assistance, there are government approved homeownership counseling agencies designed to help homeowners avoid losing their homes. To obtain a list of approved counseling agencies, please call 1-800-569-4287 or visit https://www.hud.gov/counseling. You may also contact the Homeownership Preservation Foundation's Hope hotline at 1-888-995-HOPE (4673).

This matter is very important. Please give it your immediate attention.

Sincerely,

Shellpoint Mortgage Servicing
P.O. Box 10826
Greenville, SC 29603
800-268-9706

For more information, visit www.shellpointmtg.com. You may also email Ineshia Taylor at lossmitigation@shellpointmtg.com.

# APPENDIX H

7-811-04605-0000780-001-2-000-000-000-000

# shellpoint®

## MONTHLY BILLING STATEMENT

Statement Date: 07/27/2024

**Shellpoint Mortgage Servicing**
P.O. Box 10826 • Greenville, SC 29603
Customer Service: 800-268-9706

| | |
|---|---|
| Loan Number: | |
| Billing Pmt Due Date: | 08/20/2024 |
| Payment Due: | $137,032.46 |
| *If payment is received after 08/30/2024, $0.00 late fee may be assessed.* | |

| | |
|---|---|
| Phone | 800-268-9706 |
| Website | www.shellpointmtg.com |

ROBERTA LINDERMAN

| | |
|---|---|
| Previous Balance: | $294,193.16 |
| Payments/Credits (-): | $87,080.13 |
| Draws (+): | $0.00 |
| Finance Charges (+): | $1,175.34 |
| Overlimit Amount | $0.00 |
| Unpaid Late Charges: | $0.00 |
| Unpaid NSF Fees: | $45.00 |
| Other Unpaid Fees/Charges: | $0.00 |
| Credit(s): | $0.00 |

Property Address



### PLAN BALANCES AND FINANCE CHARGES FROM 06/25/2024

| APR | Average Daily Principal Balance | Daily Periodic Rate | Periodic Finance Charge | Number of Days in Billing Cycle |
|---|---|---|---|---|
| 13.00000% | $87,080.13 | 0.03562% | $494.88 | 16 |
| 13.00000% | $87,080.13 | 0.03562% | $463.95 | 8 |

### ACCOUNT ACTIVITY

| Date | Description | Principal Amount | Finance Amount | Escrow Amount | Other Fund | Reserve Amount | Late Charge | Transaction Amount |
|---|---|---|---|---|---|---|---|---|
| 07/07/2024 | New Loan | $87,080.13 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |

### Total Payment Amount Breakdown

| Description | Unpaid Balance |
|---|---|
| Payment Due 08/20/2024 | 1,277.80 |
| Payment Due 07/20/2024 | 1,414.22 |
| Payment Due 06/20/2024 | 1,445.23 |
| Payment Due 05/20/2024 | 1,414.22 |
| Payment Due 04/20/2024 | 1,445.23 |
| Payment Due 03/20/2024 | 1,383.20 |
| Payments Due 09/20/2008 to 02/20/2024 | 128,607.56 |
| Legal* / Other** Fee Balance (see details) | 45.00 |
| | 137,032.46 |

| Fee Details: | Fee Amount |
|---|---|
| ** Property Inspection | 45.00 |
| | 45.00 |

### CREDIT INFORMATION

| Credit Limit: | $87,100.00 | Available Balance: | $0.00 | Principal Balance: | $87,080.13 |
|---|---|---|---|---|---|

### YEAR TO DATE INFORMATION

| Escrow Balance: | $0.00 | Finance Charges Paid Year to Date: | $0.00 | Insurance Paid Year to Date: | $0.00 |
|---|---|---|---|---|---|
| Reserve Account Balance: | $0.00 | Taxes Paid Year to Date: | $0.00 | Late Charges Paid Year to Date: | $0.00 |
| Assistance Balance: | $0.00 | | | | |

## Important Messages

Partial Payments: Any Partial payments that you make are not applied to your mortgage, but instead are held in a separate account to applicable state law. If you pay the balance of a partial payment, the funds will be applied to your mortgage.

## Additional Messages

Federal law requires us to tell you how we collect, share, and protect your personal information. Our Privacy Policy has not changed. You can review our policy and practices with respect to your personal information at www.shellpointmtg.com or request a copy to be mailed to you by calling us at 800-268-9706.

For questions regarding the servicing of your loan, please contact us at 800-268-9706 Monday - Friday 9:00AM-9:00PM ET, and Saturday 10:00AM-2:00PM ET.

**Please read the following important notices as they may affect your rights.**

Newrez LLC dba Shellpoint Mortgage Servicing is a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose. Newrez LLC dba Shellpoint Mortgage Servicing's NMLS ID is 3013.

If you are a customer in bankruptcy or a customer who has received a bankruptcy discharge of this debt: please be advised that this notice is to advise you of the status of your mortgage loan. This notice constitutes neither a demand for payment nor a notice of personal liability to any recipient hereof, who might have received a discharge of such debt in accordance with applicable bankruptcy laws or who might be subject to the automatic stay of Section 362

# MONTHLY BILLING STATEMENT

**Please read the following important notices as they may affect your rights.**

Newrez LLC dba Shellpoint Mortgage Servicing is a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose. Newrez LLC dba Shellpoint Mortgage Servicing's NMLS ID is 3013.

If you are a customer in bankruptcy or a customer who has received a bankruptcy discharge of this debt: please be advised that this notice is to advise you of the status of your mortgage loan. This notice constitutes neither a demand for payment nor a notice of personal liability to any recipient hereof, who might have received a discharge of such debt in accordance with applicable bankruptcy laws or who might be subject to the automatic stay of Section 362 of the United States Bankruptcy Code.

**Attention Servicemembers and Dependents: The federal Servicemembers Civil Relief Act and certain state laws provide important protections for you, including interest rate protections and prohibiting foreclosure under most circumstances during and twelve months after the servicemember's military or other service. Counseling for covered servicemembers is available from Military OneSource (800-342-9647) and the United States Armed Forces Legal Assistance or other similar agencies. For more information, please visit the Military OneSource website www.militaryonesource.mil/.**

**Notice of Error or Information Request Address**
You have certain rights under Federal law related to resolving errors in the servicing of your loan and requesting information about your loan. If you want to request information about your loan or if you believe an error has occurred in the servicing of your loan and would like to submit an Error Resolution or Informational Request, please write to us. Additionally, if you believe we have furnished inaccurate information to credit reporting agencies, please write to us with specific details regarding those errors and any supporting documentation that you have and we will assist you. Error Resolution, including concerns of inaccurate information sent to credit reporting agencies, or requests for information should be sent to the following address:

Shellpoint Mortgage Servicing
P.O. Box 10826
Greenville, SC 29603

We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.

A successor in interest is someone who acquires an ownership interest in a property secured by a mortgage loan by transfer upon the death of a relative, as a result of a divorce or legal separation, through certain trusts, between spouses, from a parent to a child, or when a borrower who is a joint tenant or tenant by the entirety dies. If you are a successor in interest, or you think you might be, please contact by phone, mail or email to start the confirmation process.

**Our system of record has your preferred language as English.**

**If you prefer to receive communication in a language other than English, please contact us at 800-268-9706 to speak with a translator in your preferred language about the servicing of your loan or a document you received.**

**Si prefiere recibir las comunicaciones en otro idioma que no sea el inglés, por favor, contáctenos en el 800-268-9706 para hablar con un traductor en el idioma de su preferencia sobre la gestión de su préstamo o cualquier documento que haya recibido.**

Please note that we operate as Newrez Mortgage LLC dba Shellpoint Mortgage Servicing in Arkansas and Texas.

**Illinois Residents**
The primary regulatory authority having jurisdiction over the residential lending activities of Newrez LLC dba Shellpoint Mortgage Servicing is the Federal Trade Commission. The information is below:
Federal Trade Commission
600 Pennsylvania Ave., NW
Washington, DC 20580

**Illinois Residentes**
La autoridad competente de regulación primaria sobre las actividades de préstamos residenciales de Newrez LLC dba Shellpoint Mortgage Servicing es la Comisión Federal de Comercio. La información es a continuación:
Federal Trade Commission
600 Pennsylvania Ave., NW
Washington, DC 20580

Repayment options may be available to you. Call 800-268-9706 to discuss payment arrangements. Failure to act on this matter may result in us exercising our legal rights as permitted by the contract and applicable law.

**Statement of Method of Computing Finance Charge and Applicable Balance**
We figure the finance charge on your account by applying the periodic rate to the "average daily balance" or your account (including current transactions). To get the "average daily balance" we take the beginning balance of your account each day, add any new advances, and subtract any payments or credits and unpaid finance charges. This gives us the daily balance. Then, we add up all the daily balances for the billing cycle and divide the total by the number of days in the billing cycle. This gives us the "average daily balance".

3-811-09431-0000384-001-3-000-010-000-000

# *MONTHLY BILLING STATEMENT*

**BILLING RIGHTS SUMMARY**

**IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR BILL**

i. If you think your bill is wrong, or if you need more information about a transaction on your bill, write us a separate sheet at P.O. Box 10826 Greenville, SC 29603 as soon as possible. You may also contact us on the Web: www.shellpointmtg.com. We must hear from you no later than 60 days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

ii. In your letter give us the following information:
- Your name and account number.
- The dollar amount of the suspected error.
- Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are unsure about.

iii. You do not have to pay any amount in question while we are investigating, but you are still obligated to pay the parts of your bill that are not in question. While we investigate your question, we cannot report you as delinquent or take any action to collect the amount you question.

005-0820-0598F