IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Roberta Linderman, on behalf of Plaintiff and the class members described herein,<br><br>    Plaintiff,<br><br>v.<br><br>NewRez LLC, doing business as Shellpoint, and The Bank of New York Mellon,<br><br>    Defendants. | No. 25 C 4271 |

Memorandum Opinion and Order

On October 31, 2025, I granted defendants' motion to dismiss Linderman's first amended complaint and gave Linderman thirty days to file a second amended complaint. Linderman moved both for leave to file a second amended complaint and for reconsideration of the October 31 decision. The motion for reconsideration is before me now. That motion is denied.

"Reconsideration is not an appropriate forum for rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion." *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996). Accordingly, motions for reconsideration are

1

granted only in rare circumstances. *See Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990). A full account of the facts of this case can be found at *Linderman v. NewRez LLC*, No. 25 C 4271, 2025 WL 3037795, at *1 (N.D. Ill. Oct. 31, 2025).

Linderman identifies five grounds for reconsideration: (1) I mischaracterized a Home Affordable Modification Agreement ("HAMA") as a "letter," leading me to miss that Linderman had repudiated her Home Equity Line of Credit ("HELOC") loan, triggering the statute of limitations in 2014; (2) I impermissibly read a provision from Illinois's ten-year statute of limitations regarding financial instruments into its five-year statute of limitations; (3) I incorrectly took Linderman to concede that the Bank of New York Mellon ("BNYM") was neither a creditor nor an assignee of her HELOC; (4) I was wrong that Linderman was trying to smuggle Truth in Lending Act ("TILA") claims under the guise of Fair Debt Collection Practices Act ("FDCPA") and Illinois Consumer Fraud and Protection Act ("ICFA") Act claims; and (5) as best I can tell, Linderman believes that I erred in finding that Counts V and VI were derivative of the remainder.

I do not quite agree with defendants that each of these points merely rehashes Linderman's previous arguments—she makes new points, also inappropriate in a motion to reconsider—but I do not

2

find that Linderman has presented the kind of new facts or changes in controlling law that would lead me to upset my previous decision. Considering that there is yet more briefing on the table regarding Linderman's pending motion for leave to file a second amended complaint, I will briefly address why I do not find these arguments compelling.

I.

Linderman argues that I should have recognized that the HAMA that she signed with Bank of America adjusting her first mortgage was more than a mere "letter." Specifically, she contends that because the HAMA informed Bank of America in detail regarding her diminished financial circumstances, it constituted a repudiation of the HELOC which should have triggered the statute of limitations. I continue to find it implausible that the HAMA could have constituted a repudiation of the HELOC. A party can breach the entirety of a continuing contract by a total repudiation. *Hassebrock v. Ceja Corp.*, 29 N.E.3d 412, 422 (Ill. App. Ct. 2015). And a party can implicitly repudiate a contract by representing that they cannot or will not perform. *Id.*

But consider that that is not what Linderman represented even as to the first mortgage. Linderman promised in the HAMA to *continue* making (adjusted, reduced) payments. ECF 18-1 at 22–24. I cannot plausibly read that promise as simultaneously implicitly

3

promising the opposite as to the HELOC. As such, without passing on whether a repudiation would have affected the statute of limitations, I find that the HAMA did not constitute such a repudiation.

## II.

Linderman makes a new argument as to the statute of limitations under the rules of statutory construction.

The general rule is that a statute of limitations begins to run on the date that a cause of action accrues; where payments are due in installments, the statute begins to run against each installment as it comes due. *Thread and Gage Co., Inc. v. Kucinski*, 451 N.E.2d 1292, 1296 (Ill. App. Ct. 1983). An acceleration clause alters the general rule and allows a creditor to maintain a cause of action as to all payments, including future payments, when a debtor defaults as to one. *Id*. at 1297. The purpose, or one purpose, of an acceleration clause is to "protect the lender from having to sue piecemeal whenever a payment is missed" to preserve the lender's rights under the statute of limitations. 17B C.J.S. Contracts § 799 (Acceleration provisions in contracts). Also an exception to the general rule is that missed payments will not trigger the statute of limitations when an instrument contains a maturity date; instead, the statute of limitations only begins to run after the maturity date. *Pan-Am Life Ins. Co. v. Invex*

*Holdings, N.V.*, 1996 WL 734692, at \*1, \*5 (N.D. Ill. Dec. 19, 1996) (citing *Watts v. Hoffman*, 77 Ill. App. 411, 413 (Ill. App. Ct. 1898) and *Blakeslee v. Hoit*, 116 Ill. App. 83, 87 (Ill. Ct. App. 1904)). Where an instrument contains an acceleration clause and a maturity date, a missed payment will not trigger the statute of limitations unless the lender exercises the acceleration clause. *Pan-Am*, 1996 WL 734692 at \*5. This combined rule has been added to the language of Illinois's ten-year statute of limitations. 735 Ill. Comp. Stat. 5/13-206 as amended by Ill. P.A. 90-451, § 5, eff. Jan. 1, 1998.

Linderman's argument goes this way. The HELOC in this case is an oral contract, and not a promissory note, so it is governed by the five-year statute of limitations at 735 Ill. Comp. Stat. 5/13-205. The five-year statute does not contain the language regarding acceleration clauses and maturity dates contained in the ten-year statute. If one reads the five- and ten-year statutes *in pari materia*, then one must conclude that the legislature's intent must have been to cabin the rule about acceleration clauses and maturity dates to promissory notes, leaving it inoperative as to oral contracts for payment. A court which imported the language from the ten-year to the five-year statute would thus be doing so in the teeth of legislative intent and, effectively, allowing the parties to a contract to extend the statute of limitations in

5

violation of good public policy. *See Hovde v. ISLA Dev. LLC*, No. 2021 WL 4477912, at *1, *4 n.10 (N.D. Ill. Sep. 30, 2021) (predicting that the Illinois Supreme Court would join the majority of state courts in frowning on contractual waivers of the statute of limitations). Thus, says Linderman, because the rule now codified in the ten-year statute is inapplicable to oral contracts, where a HELOC contains both an acceleration clause and a maturity date, the statute of limitations as to the whole debt should begin to run as soon as the creditor has the option of exercising the acceleration clause. Leaving aside its untimeliness, this argument has at least some rhetorical merit. *Bally Export Corp. v. Balicar, Ltd.*, 804 F.2d 398, 404 (7th Cir. 1986) ("[A] motion for reconsideration is an improper vehicle to...tender new legal theories.")

But I decline to read so deeply into legislative intent. *Pan-Am* traces the rule regarding maturity dates and acceleration clauses through two Illinois opinions to *Richardson v. Warner*, 28 F. 343 (D. Neb. 1886). 1996 WL 734692, at *5. Judge Brewer noted in that case that even in 1886, the principle that the statute of limitations does not begin to run until an instrument's maturity date was the settled law of the "the United States circuit court for this district." *Richardson*, 28 F. at 344. The language in the 1997 amendment to the ten-year statute of limitations codifies

6

that rule and clarifies its application as to promissory notes, but I cannot accept, without more, that the legislature intended with that amendment to impliedly annul a century-old rule as to all other instruments.

### III.

Linderman next clarifies that she did not concede anything as to BNYM and reiterates that the bank must be either a creditor or assignee. Defendants respond that BNYM is the trustee of the trust in which the HELOC resides and is neither creditor nor assignee. BNYM is indeed the indenture trustee of the CWHEQ Revolving Home Equity Loan Trust, Series 2006-F, and is not an original creditor under TILA. *See Chow v. Aegis Mortg. Corp.*, 286 F. Supp. 2d 956, 959 (N.D. Ill. 2003) ("The only parties who can be liable for [TILA] violations are the original creditor and assignees of that creditor."). To the degree that any of the defendants may be an assignee, the TILA violations that Linderman has pled were not "apparent on the face of the disclosure statement" of the HELOC and as such assignees of the HELOC are not liable under TILA. 15 USC § 1641(e) ("any civil action against a creditor for a violation...may be maintained against any assignee...only if the violation for which such action or proceeding is brought is apparent on the face of the disclosure statement").

**IV.**

Linderman's fourth point is closer to a rehash. She insists that she is not disguising a TILA claim as an FDCPA or IFCA claim. Her logic is that creditors under TILA cannot charge interest on an outstanding debt without sending the borrower monthly statements. *See* 15 U.S.C. § 1637(b); 12 C.F.R. § 1026.5(b)(2). Here, between 2009 and 2024, neither the HELOC's original creditor Countrywide Bank, N.A. nor anyone else sent any statements. Thus, argues Linderman, the debt could not have grown. So, it is not that defendants violated TILA; the creditor presumably did that. Rather, because the debt could not have grown, defendants are violating the FDCPA and the ICFA by representing that they can collect on nonexistent interest.

The problem is that TILA imposes restrictions and requirements on certain actors in the marketplace, not on debt or interest themselves. Under TILA, creditors are required to send monthly statements, but the law does not make those statements a prerequisite to the accumulation of interest. *See Neff v. Cap. Acquisitions & Mgmt. Co.*, 352 F.3d 1118, 1120 (7th Cir. 2003). Reasonable minds might find it odd that TILA would prevent a creditor from collecting interest on a loan after close to two decades of inaction but that it would not prevent the creditor from selling the loan to a purchaser who could then collect that

8

interest. Plaintiff's counsel clearly do, given the cases in which they have advanced similar arguments: *e.g.*, *Hubbard v. Ameriquest Mortg. Co.*, 624 F. Supp. 2d 913 (N.D. Ill. 2008); *Hamm v. Ameriquest Mortg. Co.*, 506 F.3d 525 (7th Cir. 2007); *Neff v. Cap. Acquisitions & Mgmt. Co.*, 238 F. Supp. 2d 986 (N.D. Ill. 2002), *aff'd,* 352 F.3d 1118 (7th Cir. 2003); *Lee v. Northland Grp.*, No. 02 C 6083, 2003 WL 25765398 (N.D. Ill. Apr. 24, 2003); and *Robb v. Cap. Acquisitions & Mgmt. Co.,* No. 02 C 4829, 2002 WL 31654941 (N.D. Ill. Nov. 21, 2002). But the law here, absent legislative action, is settled against Linderman.

## V.

Linderman asserts finally that I have misunderstood her claims at Counts V and VI as resting on, and being derivative of, her statute of limitations and TILA arguments. Rather, her requests for declaratory and injunctive relief are free floating—she is simply saying she owes neither principal nor interest and asking me to find the same. But defendants are correct when they argue that requests for declaratory judgment and injunctions are not independent causes of action but remedies *for* causes of action. *Sieving v. Continental Cas. Co.*, 535 F. Supp. 3d 762, 774 (N.D. Ill. 2021). That is, Linderman can only ask me to declare that she owes no principal or enjoin defendants from collecting interest by citing some legal claim to those effects. And the claims that

Linderman cites are (1) that the debt is time-barred; and (2) that the interest accumulated despite defendants' (or the creditor's) failure to send statements under TILA. Thus, claims at Counts V and VI are derivative and fail with the remainder.

**VI.**

In light of the above, I deny Linderman's motion to reconsider.

Dated: January 8, 2026

ENTER ORDER:

_____
Elaine E. Bucklo
United States District Judge