IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Roberta Linderman, on behalf of Plaintiff and the class members described herein,<br><br>    Plaintiff,<br><br>    v.<br><br>NewRez LLC, doing business as Shellpoint, and The Bank of New York Mellon,<br><br>    Defendants. | No. 25 C 4271 |

Memorandum Opinion and Order

On October 31, 2025, I granted defendants' motion to dismiss Linderman's first amended complaint and gave Linderman thirty days to file a second amended complaint ("SAC"). Linderman moved both for leave to file an SAC and for reconsideration of the October 31 decision. The motion for leave is before me now. I grant that motion in part.

A full account of the facts of this case can be found in my previous opinion granting defendants' motion to dismiss. *Linderman v. NewRez LLC*, No. 25 C 4271, 2025 WL 3037795, at *1 (N.D. Ill. Oct. 31, 2025). Briefly, Linderman took out a home equity line of credit ("HELOC") backed by a mortgage on her home in 2006. In that

1

same year, the HELOC became part of a securitized trust of which the Bank of New York Mellon ("BNYM") is the indenture trustee. After 2008, Linderman fell behind on both her primary mortgage and on the HELOC. While Linderman restructured her primary mortgage in 2014, she received no communications about nor made any payments on the HELOC after 2009. In 2024, Linderman began receiving letters from NewRez (doing business as "Shellpoint") seeking to collect the accelerated principal and interest on the HELOC. Linderman then filed this lawsuit.

**I.**

Before trial, a court "should freely give leave [to amend a complaint] when justice so requires." Fed.R.Civ.P. 15(a)(2). But I can deny a motion for leave to amend "where there is undue delay, bad faith, dilatory motive, a repeated failure to cure deficiencies, undue prejudice to the opponent, or where the amendment would be futile." *Bower v. Jones*, 978 F.2d 1004, 1008 (7th Cir. 1992).

To determine whether a proposed amendment is futile, courts in the Seventh Circuit apply "the legal sufficiency standard of Rule 12(b)(6) to determine whether the proposed amended complaint fails to state a claim." *Runnion ex rel Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 524 (7th Cir. 2015). "Thus, to survive an attack on futility grounds, the amended complaint

2

must allege 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Carmona v. 4-Brothers Transport LLC*, 731 F. Supp. 3d 1046, 1050-51 (N.D. Ill. 2024) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "[T]he decision to grant or deny a motion to file an amended pleading is a matter purely within the sound discretion of the district court." *Brunt v. Serv. Emps. Int'l Union*, 284 F.3d 715, 720 (7th Cir. 2002).

## II.

Linderman's SAC adds as a defendant the securitized trust into which the HELOC was placed: CWHEQ Revolving Home Equity Loan Trust, Series 2006-F (the "Trust"). I cannot find that Linderman failed to add the Trust earlier in an effort to delay proceedings or to otherwise prejudice the defendants—Linderman has clearly been trying to find the correct entity to sue, and relied on defendants' communications to identify that entity. ECF 33 at 2. And as defendants pointed up by citing the Judge Richard Posner's opinion explaining the ins and outs of these securitization arrangements, their obtuseness is part of why they became so infamous after 2008. ECF 36 at 14 (citing *CWCapital Asset Mgmt., LLC v. Chicago Props., LLC*, 610 F.3d 497, 499 (7th Cir. 2010)).

**III.**

Linderman's SAC, like her first complaint, advances claims in six counts. The first four fall under the Fair Debt Collection Practices Act ("FDCPA") and the Illinois Consumer Fraud and Protection Act ("ICFA"), while the last two pray for declaratory and injunctive relief derivative of the first four counts.

### A. Statute of Limitations Claims

Linderman's claims in Counts I and III are functionally identical to those that I previously dismissed on defendants' Fed.R.Civ.P. 12(b)(6) motion. *Linderman*, 2025 WL 3037795 at *3. Linderman has not added anything that would make these claims viable, and their inclusion in the SAC is futile. Also futile is the inclusion of Count V, whose prayer for declaratory and injunctive relief is derivative of the statute of limitations claims.

### B. TILA Claims

In Counts II and IV, Linderman claims that defendants cannot collect interest on the HELOC because they failed to send her monthly statements required by the Truth in Lending Act. Because they have no right to collect the interest, attempting to do so constitutes an "unfair practice" under the FDCPA and the ICFA. I previously dismissed these claims because TILA does not apply to

4

either NewRez or BNYM. *Id.* at *3–*4. Linderman has not amended the argument in these counts; instead, she has added the Trust as a defendant, in the hope that it is either a "creditor" or "assignee" to whom TILA *would* apply. But the Trust is not a creditor for the same reason that the other defendants are not creditors. Under 15 U.S.C. § 1602(g), a creditor must be "the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness." Here, that was Countrywide Bank, N.A. ECF 18-1 at 10.

And as to whether or not the Trust is an assignee, that is immaterial.[1] Under TILA, assignees are only liable if "the [TILA] violation...is apparent on the face of the disclosure statement." 15 U.S.C. § 1641(e)(1). That is, an assignee is only liable if there is a TILA-related paperwork error in the original loan documents. 15 U.S.C. § 1641(e)(2). Here, the alleged violation has to do not with the documents but with post-formation behavior. Even if the Trust is an assignee, it is not liable under TILA. The inclusion of the TILA claims in the SAC is futile.

---

[1] Defendants have not provided much clarity here. Normally, a trust which has purchased a debt would be an assignee; a trustee might or might not be, depending on the trust arrangement; what the particular assignments as to the particular rights to this HELOC are seems to be matter for discovery.

5

### C. Interest Act Claims

At Counts II and IV of the SAC, Linderman advances a new legal theory. In addition to violating TILA, she argues, the failure to send her monthly interest statements violated the Illinois Interest Act ("Interest Act"), which requires that lenders send monthly statements on revolving credit agreements (likewise making the attempt to collect interest on the HELOC an "unfair practice" under the FDCPA and the ICFA). 815 Ill. Comp. Stat. 205/4.2(b). Linderman cites *PRA III, LLC v. Hund*, which holds that unlike TILA, the Interest Act applies to assignees as well as original creditors. 846 N.E.2d 965, 968–972 (Ill. App. Ct. 2006). Defendants respond that the Interest Act is "irrelevant" because it governs only the maximum allowable rate of interest and because Linderman has not alleged that defendants are attempting to collect more than the maximum rate. ECF 36 at 17.

I cannot agree that the Interest Act is irrelevant. It is true that the act regulates the maximum allowable interest rate in Illinois. *See generally* 815 Ill. Comp. Stat. §§ 205/0.01–205/11; *PRA III*, 846 N.E.2d at 969. But at the same time, the subsection of the Interest Act regarding revolving credit agreements contains mandatory language about a creditor's duty to send statements. 815 Ill. Comp. Stat. 205/4.2(b) ("...if at the end of [a] billing cycle there is an unpaid balance owing to the lender from the debtor,

6

the lender must give to the debtor the following information..."). And while most cases interpreting the law have had to do with maximum interest, at least one Illinois appellate court has found that the Interest Act's sections on revolving credit agreements govern how those agreements work procedurally, rather than just the rate of interest they can charge. *First Am. Title Ins. Co. v. TCF Bank, F.A.*, 676 N.E.2d 1003, 1007 (Ill. App. Ct. 1997).

Likewise, it is plausible that a violation of the Interest Act would constitute an "unfair practice" under the FDCPA and the ICFA. Courts which have considered that argument have failed to reach it because they have decided their cases on the ground that there was no Interest Act claim in the first place. *PRA III*, 846 N.E.2d at 972-73; *Olvera v. Blitt & Gaines, P.C.*, 431 F.3d 285, 287-89 (7th Cir. 2005). But at least one district court in this circuit has credited the theory. *Shanahan v. Porick*, No. 03 C 7211, 2004 WL 406768, *1 (N.D. Ill. Feb. 27, 2004) (finding, in denying a motion to dismiss, that a "violation [of the Interest Act] constitutes a violation of the FDCPA.").

Linderman's argument about the Interest Act thus plausibly states a claim at Counts II and IV, meaning that amendment to her complaint is not futile. *Carmona*, 731 F. Supp. 3d at 1050-51. As such, I grant Linderman leave to file her SAC only as to Counts II and IV (and to Count VI, which is derivative of Counts II and IV),

and only on the theory that defendants have violated the Interest Act, not that they have violated TILA.

I have noted, as have defendants, that Linderman pled her new Interest Act claim against all three defendants in Count IV but only against NewRez in Count II. As such, in the interest of justice, I also grant Linderman leave to amend her SAC to plead Count II against all three defendants. Fed.R.Civ.P. 15(a)(2).

Dated: January 8, 2026   ENTER ORDER:

              _____
              Elaine E. Bucklo
              United States District Judge